743 So.2d 24 (1999)
Juanita V. RAMOS, et al., Appellants,
v.
PHILIP MORRIS COMPANIES, INC., et al., Appellees.
Nos. 98-389, 98-397, 98-418, 98-513, 98-569, 98-2237.
District Court of Appeal of Florida, Third District.
March 24, 1999.
*26 Eric G. Olsen, Jason Beach; Richard Bennett; Lawrence W. Schonbrun, Berkeley; Nicolas J. Gutierrez, Jr., Miami; Alan B. Morrison and Brian Wolfman, Washington, DC; Wechsler Harwood Halebian & Feffer and Samuel K. Rosen and Stuart Wechsler, New York City; Lerner & Pearce and Robert Wayne Pearce, Ft. Lauderdale; Barnow & Goldberg and Gina R. Raith and Ben Barnow, Chicago, IL, for appellants.
Stanley M. Rosenblatt and Susan Rosenblatt, class counsel.
Arno Kutner, Guardian ad Litem, for survivors of the class.
John B. Ostrow, Attorney ad Litem, for absent class members and their survivors.
Carlton, Fields, Ward, Emanuel, Smith & Cutler and Douglas J. Chumbley, Miami; Peter S. Schwedock, Miami; King & Spalding and Mike Russ and Richard A. Schneider; Debevoise & Plimpton and Joseph P. Moodhe and Steven Klugman, New York City; Kenny Nachwalter Seymour Arnold Critchlow & Spector and Michael Nachwalter, Miami; Covington & Burling and James A. Goold, Washington, DC; Kasowitz, Benson, Torres & Friedman and Michael Fay, New York City; Jones, Day, Reavis & Pogue and Hugh R. Whiting, Cleveland, OH; Shook Hardy & Bacon and David Hardy and Edward A. Moss; Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, and David L. Ross and Larry D. Silverman; Coll Davidson Carter Smith Salter & Barkett and Barry R. Davidson, Miami; Clarke, Silverglate, Williams & Montgomery and Mercer K. Clarke, Miami, for appellees.
Kluger, Peretz, Kaplan & Berlin and Abbey L. Kaplan, Miami, as amicus curiae.
John F. Banzhaf, III, for Action on Smoking and Health, as amicus curiae.
Before GERSTEN, GODERICH and SHEVIN, JJ.
SHEVIN, Judge.
The appellants, who are objecting to a class action settlement and attorney's fee agreement between the class representatives and the defendant tobacco companies, seek reversal of orders denying their motions to intervene, and approving the settlement and attorney's fees and costs agreement. We affirm in part and reverse in part.

I. Facts
On October 31, 1991, nonsmoking flight attendants, represented by Norma Broin and others, filed a class action against Philip Morris Companies and other companies ("defendants") that manufacture and sell tobacco products. The trial court granted the defendants' motion to dismiss the class allegations, and this court reversed, see Broin v. Philip Morris Cos., Inc., 641 So.2d 888 (Fla. 3d DCA 1994), review denied, 654 So.2d 919 (Fla.1995).
On December 30, 1996, notice of the class certification was provided by mail and by publication to over 150,000 current and former flight attendants. The class was defined as "[a]ll non-smoking flight attendants who are or have been employed by airlines based in the United States and are suffering from diseases and disorders caused by their exposure to second hand cigarette smoke in airline cabins." Approximately thirty-three-hundred former and current flight attendants filed exclusion forms, while about ten thousand flight attendants filed voluntary registration forms affirmatively demonstrating their desire to participate in the class action.
On May 7, 1997, the trial court entered an amended order setting a trial plan. Pursuant to this plan the litigation would proceed in two stages: Stage I would focus on common questions, including "generic causation"[1] as to the various disease categories *27 in the Broin complaint; Stage II would focus on remaining issues. There was to be an adjournment between Stage I and Stage II to provide the parties with time to complete discovery. The conclusion of Stage I would not result in a damage award for the class members. Rather, the individual class members were required, upon prevailing in Stage I, to come to court in Miami-Dade County and present evidence, individually, regarding specific causation, exposure levels, reliance, any other remaining liability issues, and damages.
The trial commenced in June, 1997. The class members called fifty-two witnesses. They rested their case on September 22, 1997. The defendants submitted motions for directed verdict, seeking judgment as to the fraud, misrepresentation, and conspiracy counts, and as to all punitive damage claims. These motions were pending when the parties presented to the trial court their proposed settlement on October 10, 1997. The trial court preliminarily approved the settlement on that date, subject to further consideration at the final settlement hearing. At that point in the trial the defendants had called fourteen witnesses.
The settlement agreement contains many procedural and substantive provisions. The defendants have agreed to: waive the statute of limitations; shift the burden of proof on generic causation as to lung cancer, chronic obstructive pulmonary disease, chronic bronchitis, chronic sinusitis and emphysema; allow the class members to proceed in the venue where they reside or where otherwise proper; provide a copy of the video of the trial, including expert testimony, for use in individual lawsuits; accept service of process by certified mail; not contest personal jurisdiction or service of process; not challenge joinder of defendants in one lawsuit; not assert that any released party is responsible in whole or part for injuries or damages; not assert motions to dismiss challenging legal sufficiency of any claims in individual actions that restate verbatim the counts in the Broin complaint; support Federal legislation that would impose a smoking ban on all international flights; and establish a $300 million settlement fund to endow a foundation to sponsor scientific research for early detection and cure of diseases of flight attendants caused by cigarette smoke, which will be managed and directed by a board of trustees and governed by a trust instrument. The parties have further agreed that individual cases will proceed expeditiously, as long as the settling defendants have at least sixty days notice of any trial in which they are named as defendants; that the survivors of flight attendants will receive the benefits of the settlement; and that the class members will retain their right to bring an action against any party other than defendants. The class members and survivors retain the right to bring individual claims for compensatory damages on any theory of liability other than fraud, misrepresentation, or any other willful or intentional conduct, but the class members have agreed to waive claims for punitive damages. The settlement covers only existing claims; thus, any class member who develops a different disease or medical disorder after January 15, 1997, may still bring an action under any theory of liability. Class counsel advised the court that it would provide continuing assistance in all individual claims without charge, and provided the court with a list of South Florida law firms that have agreed to represent class members for a standard contingent fee, minus a twenty-five percent referral fee that would be waived by class counsel. Subsequent to the settlement, defendants agreed to pay $46 million in attorney's fees and $3 million in costs to class counsel.
The trial court approved the settlement, finding that it was "fair, adequate and reasonable." The court held that there *28 was "no evidence in the record or before this Court which would indicate that there was even the slightest hint of collusion between the parties or their attorneys at arriving at the terms of the settlement."
The court observed that there were substantial risks and weaknesses in the flight attendants' case, particularly in the punitive damage and fraud claims. With regard to these claims, the court found that "Plaintiffs' counsel had a genuine and real reason to fear directed verdict in favor of the Defendants on these Counts." The court held that there was a high likelihood that the jury would not have found generic causation as to all of the 26 diseases and conditions. It further found that there were significant statute of limitations and repose problems for most, and close to all, class members. The court had deferred ruling on this question until after the end of Stage I, but it stated that most class members' claims may have been time barred even if they had prevailed in Stage I. There were possibilities of large delays following Stage I, the court held, as there was already a scheduled adjournment for discovery, and as the defendants had the opportunity to appeal any Stage I victory in favor of the class. Perhaps most significantly, the court found that "[t]aken as a whole, the outcome of this case, in this Court's opinion was far less than 50/50." (emphasis added).
A handful of individuals objected to the settlement. The court noted that the objectors represented only a fraction of one percent of the class members. All of the class representatives approved, and strongly endorsed, the settlement.
The court further approved the attorney's fees, finding that they were reasonable under the criteria enumerated in Kuhnlein v. Department of Revenue, 662 So.2d 309 (Fla.1995). The court found that a multiplier of five was appropriate, and it stated that the $46 million fee is considerably less than a fee based on the lodestar calculation of a reasonable hourly fee times five.
The court, in a separate order, denied the objectors' motions to intervene. In each case the court found either that there was insufficient information to establish that the objectors were class members, or that the motions were untimely. It further found that there was no showing that the class representatives were inadequate to represent the class. This appeal follows.
The objectors that have pursued this appeal are: Angela Williams ("Williams"), Paule Mohr ("Mohr"), Kathleen Miles ("Miles"), Gail Ford and others ("Ford group"), Juanita Ramos and others ("Ramos group"), and Mary Ann Lee ("Lee"), amounting to a total of 59 individuals. Three issues are raised on appeal: first, did the court abuse its discretion in denying the motions to intervene;[2] second, did the court abuse its discretion in approving the settlement;[3] and, third, did the court abuse its discretion in approving the attorney's fees award?[4]

II. Intervention
The trial court denied all of the motions to intervene. Because each objector presents a different set of circumstances, we address them separately.

A. Williams
Williams failed to address the intervention issue in her initial brief. At oral argument, counsel for Williams conceded that this was an error on his part, but said that he felt at the time that the *29 thorough treatment of this issue in regard to the motion to dismiss the appeal was sufficient. It is not. In this court's opinion of July 22, 1998, Ramos v. Philip Morris Cos., Inc., 714 So.2d 1146 (Fla. 3d DCA 1998), issued on the motion to dismiss, we held "[w]here objectors seek intervention in order to appeal and intervention is denied, the appropriate procedure is to appeal both the final judgment and the order denying intervention." Id. at 1148 (emphasis added).
An error not raised in the brief is waived. Chaachou v. Chaachou, 135 So.2d 206, 221 (Fla.1961); Lesperance v. Lesperance, 257 So.2d 66, 67 (Fla. 3d DCA 1971). Williams failed to raise this issue in her brief. Thus, the order denying intervention must be affirmed as to Williams.

B. Mohr
The denial of the motion to intervene is also affirmed as to Mohr. In Ramos, we stated that "[l]eave to intervene should be freely granted for purposes of appeal provided that the objector is a class member and objected to the settlement in trial court." Id. at 1148. Mohr failed to assert any facts, either by way of affidavit or in her objection or motion to intervene or otherwise, which would affirmatively support class membership. Thus, the court did not abuse its discretion in denying Mohr's motion.

C. Miles
The trial court also did not abuse its discretion in denying Miles' motion to intervene. Miles argues that even though she did not file an affidavit or other document alleging facts supporting class membership, she has nonetheless established class membership because the class counsel's filings list her as a class member.
This is not sufficient, however. The class counsel's filings do not waive Miles' responsibility to affirmatively demonstrate class membership. The filings merely indicate that Miles submitted a voluntary registration form. Miles does not assert that this registration form suffices as a statement supporting class membership. Thus, we cannot say that the trial court abused its discretion as to Miles's motion.

D. The Ford Group
The Ford group did not file a timely objection, and thus, the trial court did not abuse its discretion in denying their motion to intervene. Pursuant to the court's notice of settlement and preliminary approval of settlement, an objection was due on January 5, 1998. In Ramos, we held that a motion to intervene must be granted "[s]o long as the objector is a class member and presented a timely objection to the proposed settlement." Id. at 1147 (emphasis added). The Ford group filed a motion to intervene on January 17, incorporating previously filed objections. This action does not suffice as a timely objection and, thus, the trial court did not abuse its discretion.

E. The Ramos Group
Although represented by the same counsel as the Ford group, the Ramos group presents a different set of circumstances. The Ramos group did file a timely objection on January 5, 1998. A motion to intervene for the Ramos group was filed the same day as the motion to intervene was filed for the Ford group. On January 26, 1998, seven members of the Ramos group filed affidavits: Diane M. Kotulski, Barbara A. Kaye, Ellayne G. Wsol, Constance G. Ingham, Sandy Tujo, James Heddon, and Margaret B. King-Siegal. These individuals declared in their affidavits facts sufficient to support membership in the class; that they are nonsmoking flight attendants who work or have worked on a United States based airline and who suffered from diseases or disorders alleged to be caused by exposure to second hand smoke in airline cabins as of January 15, 1997.[5] Unfortunately, Ramos herself, and the remaining members of the Ramos *30 group, did not file similar affidavits or affirmatively demonstrate in any way their class membership.
The court held that there was insufficient information to establish class membership for the Ramos group, and that the motion to intervene was untimely. However, as we held in Ramos, a motion to intervene is timely when filed "`within the time period in which the named plaintiffs could have taken an appeal.'" Id. at 1148 (quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 396, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977)). Further, the affidavits of the seven members of the Ramos group referred to above alleged the information stated in the class definition. Thus, these seven individuals affirmatively alleged facts sufficient to support class membership, and we therefore find that the trial court abused its discretion in denying intervention to Diane M. Kotulski, Barbara A. Kaye, Ellayne G. Wsol, Constance G. Ingham, Sandy Tujo, James Heddon, and Margaret B. King-Siegal.

F. Lee
Lee filed a timely objection, as the trial court noted in its order, and filed a timely motion to intervene, as this court noted in Ramos. Id. at 1148. The court issued an order denying Lee's motion on August 21, 1998, stating that her declaration attempting to support class membership was insufficient because it failed to state where she resides, which airline she was employed by, or any of her past smoking history. The declaration stated as follows:
My name is Mary Ann Lee.
1. I am currently and have been an airline flight attendant for 30 years.
2. I have worked on United States domestic airline flights for 23 years.
3. I am a nonsmoker.
4. During the years 1967 through 1990, I have suffered from the following illnesses: sinus infections, chest infections, colds, flu, asthma, burning eyes (red, swollen blood vessels), runny nose (nasal discharge), coughing, sore throat, hoarse voice, allergies, and headaches.
5. I am currently suffering from asthma, which I believe was either caused or worsened by my exposure to secondhand smoke as a result of my employment in airline cabins.
6. It is my belief that the aforementioned medical conditions from which I now suffer or have suffered in the past were either caused by or were worsened by my exposure to second-hand smoke as a result of my employment in airline cabins.
7. I have been required to seek medical attention for the above-referenced medical problems.
This information is sufficient to establish class membership for the purposes of intervention. The class definition does not require any particular state of residence, or employment with a particular airline. Further, the class definition states that the class includes "[a]ll non-smoking flight attendants." Lee's declaration clearly states that she is a "nonsmoker."
The trial court also denied Lee's motion on the basis that her claim was time barred, and therefore she waives her right to object to the settlement. We find no basis for this rationale. The trial judge recognized that the statute of limitations "presented serious problems for most and close to all class members." That being so, if we accept the trial court's reasoning, virtually no one would have standing to object.
Also, the statute of limitations is an affirmative defense which must be plead and proved by the defendant, see Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447, 448 (Fla. 1986); Comerica Bank & Trust v. SDI Operating Partners, 673 So.2d 163, 166 (Fla. 4th DCA 1996), and is waived if not plead, see Barnett Bank of Palm Beach, 493 So.2d at 448; Aboandandolo v. Vonella, 88 So.2d 282, 284 (Fla.1956). The fact *31 that an action is time-barred does not mean that the court is automatically divested of its inherent power to deal with the general subject matter. See Attache Resort Motel, Ltd. v. Kaplan, 498 So.2d 501, 503 (Fla. 3d DCA 1986), review denied, 511 So.2d 298 (Fla.1987). Therefore, timeliness is not a part of this initial determination of class membership solely for the purpose of intervention. Lee cannot be denied intervention on this basis, and we find that the trial court abused its discretion in denying Lee's motion to intervene.

G. Conclusion
In sum, we hold that eight objectors seven members of the Ramos group and Leeshould have been allowed to intervene. We do not determine that the remaining objectors are not class members; we are simply finding that their objections were either procedurally deficient, or that they failed to make an affirmative showing that they are class members. This holding does not affect their ability to take advantage of the settlement, should they choose to do so in Stage II and should they be able to demonstrate class membership at that time.
This opinion does not disturb the trial court's finding that the class representatives effectively and adequately represented all class members.[6]See McFadden v. Staley, 687 So.2d 357, 359 (Fla. 4th DCA 1997); Adiel v. Electronic Fin. Sys., Inc., 513 So.2d 1347, 1347 (Fla. 3d DCA 1987); see also Broin, 641 So.2d 888.
Having concluded that several objectors have standing to intervene, we now address whether the trial court abused its discretion in its approval of the settlement and of the class counsel's fees and costs.

III. The Settlement
The objectors primarily take umbrage with the $300 million medical foundation fund, arguing that it provides no significant benefit to the class. They further contend that the procedural aspects of the settlement, such as waiver of the statute of limitations and the shifting of the burden of proof, are worthless. We disagree. A careful analysis of the record reveals that the trial court correctly ruled that the settlement is "fair, adequate and reasonable." See Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.1977); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D.Fla.1988), aff'd 893 F.2d 347 (11th Cir.1989); Levenson, 438 So.2d at 183.
The benefits of this settlement are abundant, as recognized by virtually all of the class members, as well as the law professors, and class action and tobacco litigation experts. R. 10155-10315. The objectors' complaint that they must now bring individual lawsuits does not render the settlement inadequate. If the class had prevailed after a full trial in Stage I, the class members would have had to appear individually in Miami-Dade County to prove their damages.
One of the most significant settlement benefits is the waiver of the statute of limitations. This waiver will allow many flight attendants to pursue compensatory damages claims. As the trial court found, this defense presented a serious problem *32 for "most, and close to all" of the class members in Stage II.
Another substantial benefit is the burden-shifting provision. This provision establishes a "generic causation" presumption in favor of the flight attendants. Many experts opined that this provision forecloses any defense argument that there is no valid, scientific basis for a finding of causation. R. 10294-95. This benefit, in and of itself, is a significant victory for the individual plaintiffs. As the trial court noted, there was a "high likelihood... that the jury would not find causation as to all 26 diseases." R. 11110 (emphasis added).
The settlement provides additional benefits. The individual plaintiffs may present the trial experts' testimony via videotape, provided by the tobacco company defendants, without bearing the expense of producing live testimony. The individual class members also enjoy the option of bringing suit in their home states. Absent the settlement, the class members would have been required to try Stage II in Miami-Dade County. These benefits are substantial in light of the trial court's pronouncement that the class had a less than 50/50 chance of success. R. 11113.
The punitive damages and intentional tort claims waivers would seem to be large concessions. However, as the trial court reflected at the time the settlement was proposed, these claims were the

weakest link in the Plaintiffs' case. The evidence presented of allegations of fraud related to active or primary smoking, without the requisite nexus to second hand smoke. Plaintiffs' counsel had a genuine and real reason to fear directed verdicts in favor of the Defendants on these counts.

(Emphasis added). It cannot be argued that giving up the "weakest link" in the case runs afoul of the "fair, adequate and reasonable" test.
The objectors also oppose the foundation fund. They argue that this foundation provides no substantial benefit to the flight attendants. In essence, they want the monies to go directly to the class members. There is nothing to indicate that the tobacco companies would agree to settle if the money is to be directly paid to the class members. As defense counsel argued, none of the defendant tobacco companies have ever voluntarily or through successful litigation paid any compensation to any individual plaintiff in any lawsuit to date.
For all of these reasons, we conclude that the settlement provided substantial benefits to the class members. We hold that the trial court did not abuse its discretion by approving this settlement as "fair, adequate and reasonable."

IV. The Attorney's Fees
Next, we turn to the attack on the propriety of the attorney's fee agreement. The court approved a $46 million fee settlement, finding this amount to be considerably less than an award based on a lodestar calculation times a multiplier of five. In determining the proper lodestar and multiplier, the trial court properly relied on Kuhnlein. Under Kuhnlein, a court must review the "contingency risk" factors and the "results obtained for the benefit of the class" as required by rule 4-1.5 of the Rules Regulating the Florida Bar to establish whether the multiplier is proper. Kuhnlein, 662 So.2d at 315.
We reject the contention that the multiplier of five is not justified under Kuhnlein. The multiplier was justified because this case was extraordinarily risky. Class counsel undertook representation in a case with seemingly insurmountable odds; a case which all other attorneys had rejected. Class counsel, the firm's other lawyers and its paralegals spent 67,166 hours, or 10,333 hours per year,[7] in litigation; the likelihood of success was not strong, and, if *33 defeated, class counsel would have received no fees and no compensation for approximately $3 million in out-of-pocket costs. An objector's counsel conceded at oral argument that, based on the risk factor alone, the multiplier would have to be five.
In analyzing the multiplier, the trial court stated:
[T]he chances of success were much lower than 50/50. There have been many first hand tobacco smoke cases across the nation with verdicts for the Plaintiff a rarity. Since this was a first of a kind second hand smoke case, a favorable outcome for the Plaintiffs was very much in doubt from the beginning. The likelihood of success was very low in this litigation and Class Counsel have demonstrated the highest skill and commitment in representing their clients and producing substantial benefits for all class members.
(Emphasis added).
Having demonstrated high contingency risk factors, we next note that class counsel obtained substantial results for the class' benefit, including:
1. The waiver of the statute of limitations defense;
2. the shifting of the burden of proof;
3. the resolution of venue and choice of law issues;
4. the cost-free trial video; and
5. the $300 million medical foundation fund.
These benefits expedite litigation and increase the individual plaintiff's chances of recovery in Stage II of the trial. Furthermore, the medical foundation will provide treatment to mitigate diseases afflicting many class members, such as chronic bronchitis and chronic sinusitis, in addition to providing early detection and treatment for diseases such as lung cancer.
We reject the contention that Kuhnlein does not authorize a multiplier of five in this case. The objectors argue that this is not a common fund case, and thus, the maximum permissible multiplier allowable is 2.5.[8] We disagree. Kuhnlein states that a fee-shifting case has a maximum multiplier of 2.5. Here, however, there is no statute directing the judge to award attorneys' fees to a prevailing party, removing this cause from the ambit of fee-shifting cases. See Kuhnlein, 662 So.2d at 311; Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1146 (Fla.1985).
This case presented a high contingency risk and the need for high-level counsel, regardless of whether the fee is paid from the common fund or is negotiated separately. A "multiplier which increases fees to five times the accepted hourly rate is sufficient to alleviate the contingency risk factor involved and attract high level counsel to common fund cases while producing a fee which remains within the bounds of reasonableness." Kuhnlein, 662 So.2d at 315. Thus, as in Kuhnlein, the analogous circumstances justify a multiplier of five.
Accordingly, we affirm the trial court's approval of the $3 million in costs and the $46 million in attorney's fees.

V. Conclusion
Based on the forgoing, we reverse the trial court's order denying the motion to intervene with regard to Mary Ann Lee and with regard to certain Ramos group members: Diane M. Kotulski, Barbara A. Kaye, Ellayne G. Wsol, Constance G. Ingham, Sandy Tujo, James Heddon, and Margaret B. King-Siegal. We affirm the *34 order denying intervention to the remaining objectors. We also affirm the order approving the settlement as "fair, adequate and reasonable," and approving the attorney's fees and costs.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] Generic causation in this case can be defined as whether second hand smoke generally can cause one or more of the 26 specific diseases and medical conditions alleged in the complaint. Specific causation is whether second hand smoke did in fact cause the individual class members' diseases and/or conditions.
[2] See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992); Wong v. von Wersebe, 365 So.2d 429, 430-31 (Fla. 3d DCA 1978).
[3] See Levenson v. American Laser Corp., 438 So.2d 179, 183 (Fla. 2d DCA 1983); Hardwicke Cos., Inc. v. Freed, 299 So.2d 116, 118-19 (Fla. 2d DCA 1974), cert. denied, 310 So.2d 738 (Fla.1975).
[4] See Nixon v. Bryson, 488 So.2d 607, 609 (Fla. 3d DCA), review denied, 494 So.2d 1152 (Fla.1986).
[5] We find no merit to the argument that there is an inconsistency in the class definition.
[6] We reject the argument that there was a conflict of interest in the representation of the class. The objectors cite Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), as authority for this proposition. However, in that case the "most salient" divergence of interests was between those who were currently injured by asbestos contamination, and "exposure-only" plaintiffs, who had not yet suffered injury. Id. at 2244, 2251. The settlement provided that those who had not suffered injury were likewise bound by the settlement. Id. at 2239. In the instant case, those who suffer future injury may still bring an action for damages, compensatory or punitive, under any theory of liability, including intentional torts. Further, in Amchem only a small number of plaintiffs could bring individual suits subsequent to the settlement. Id. at 2241. In this case, every class member may bring an individual suit.

Our opinion in the 1994 appeal of this case explains why the class representatives are adequate. Broin, 641 So.2d at 892.
[7] We disagree with the objectors' position that the trial court erred in relying on class counsel's reconstructed records. See City of Miami v. Harris, 490 So.2d 69, 72 (Fla. 3d DCA 1985), cert. denied, 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987).
[8] This is not a common-fund case in which "the defendant pays a specified sum for the benefit of class members. The class attorneys can then petition the court to obtain fees from the fund...." Kuhnlein, 662 So.2d at 310; see also Caroline R. Krivacka & Paula D. Krivacka, Method of Calculating Attorneys' Fees Awarded in Common-Fund or Common-Benefit CasesState Cases, 56 A.L.R. 5th 107 (1998). Here, the settlement was agreed to prior to fee negotiations between class counsel and defendants. Any reduction in the fee award would benefit only the tobacco companies and not the class members.