897 So.2d 480 (2004)
PHILIP MORRIS INC., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown & Williamson Tobacco Corp., individually and as successor by merger to the American Tobacco Company, Appellants,
v.
Lynn FRENCH, Appellee.
No. 3D02-2772.
District Court of Appeal of Florida, Third District.
December 22, 2004.
Rehearing and Rehearing Denied April 13, 2005.
*481 Greenberg Traurig, P.A., Miami, and David L. Ross, and Elliot H. Scherker, and Julissa Rodriguez, for appellant.
Grover, Weinstein & Trop, P.A., Miami, and Robert Grover, and Marvin Weinstein; Podhurst, Orseck, P.A., Miami, and Joel S. Perwin, for appellee.
Before SCHWARTZ, C.J., and GREEN and SHEVIN, JJ.
Rehearing and Rehearing En Banc Denied April 13, 2005.
PER CURIAM.
Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company (collectively referred to as "the tobacco defendants") appeal from a final judgment, based on a jury verdict, awarding Lynn French $5.5 million dollars in damages for injuries she incurred as a result of second-hand smoke. The plaintiff, French, cross-appeals from the final judgment's allocation of liability based upon the defendants' market shares, pursuant to a settlement agreement among the defendants in a prior class action. For the following reasons, we affirm the final judgment in part and remand with instructions that the defendants be held jointly and severally liable for the plaintiff's damages.

I. Facts

A. Pre-Suit Events

1. The Broin Settlement
In 1991, a class action suit was brought on behalf of 60,000 non-smoking flight attendants who had been exposed to second-hand cigarette smoke (otherwise known as environmental tobacco smoke or "ETS"). This court approved the class in Broin v. Philip Morris Cos., Inc., 641 So.2d 888 (Fla. 3d DCA 1994). On remand the trial court entered an order adopting a trial plan for the class action suit. This order provided:
In order to conserve precious Court time and to expedite the trial of the issues, it has become apparent that this case should be decided in Stages and Phases which would include "Special Verdicts" and "General Verdicts" (Manual for Complex Litigation).
* * *
Therefore, the Court has decided on the following Plan.
1. The trial shall be tried in Two Stages. The First Stage shall encompass all common issues with regard to the subclass of Lung/Pulmonary/Sinus diseases and disorders, including lung cancer. The First Stage will encompass common issues of Generic Causation (scientific) and issues revolving around *482 the behavioral aspects of the Defendants concerning fraudulent misrepresentations and/or conspiracy. The Second Stage shall be concerned with the Non-Common or Individual Claims of the Plaintiffs in this subclass.
After the Stage One trials,[1] the Stage Two trials would then proceed on the individual claims of the plaintiffs as they relate to damages and the "[l]iability issues that are remaining, including Defenses available to the Defendants."
Phase One of Stage I began on June 2, 1997. The Plaintiffs presented 52 witnesses over three and one-half months, and rested their case on September 22, 1997. The tobacco defendants moved for a directed verdict on the counts of fraud, misrepresentation, conspiracy, and punitive damages. The trial court took the motion under advisement. The defendants presented 14 witnesses. Thereafter, a settlement was reached on October 9, 1997. The trial court preliminarily approved the agreement and subsequently approved, without modification, the agreement following a fairness hearing. The motion for directed verdict was still pending at the time of the settlement.
The settlement agreement contains many provisions with both sides having made considerable concessions. The tobacco defendants agreed to fund a research foundation[2] with $300 million and to pay counsel for the class $49 million in fees and costs. In addition, the tobacco defendants agreed to:
[W]aive the statute of limitations; shift the burden of proof on generic causation as to lung cancer, chronic obstructive pulmonary disease, chronic bronchitis, chronic sinusitis and emphysema; allow the class members to proceed in the venue where they reside or where otherwise proper; provide a copy of the video of the trial, including expert testimony, for use in individual lawsuits; accept service of process by certified mail; not contest personal jurisdiction or service of process; not challenge joinder of defendants in one lawsuit; not assert that any released party is responsible in whole or part for injuries or damages; not assert motions to dismiss challenging legal sufficiency of any claims in individual actions that restate verbatim the counts in the Broin complaint; [and] *483 support Federal legislation that would impose a smoking ban on all international flights.
Ramos v. Philip Morris Cos., Inc., 743 So.2d 24, 27 (Fla. 3d DCA 1999).
Under the agreement (hereinafter "Broin settlement agreement"), the class plaintiffs abandoned all claims for punitive damages and agreed to dismiss with prejudice, their fraud, misrepresentation and conspiracy claims. The plaintiffs and their survivors, however, retained the right to bring individual suits for compensatory damages based on any "theory of liability other than for fraud, misrepresentation, conspiracy to commit fraud or misrepresentation, RICO, suppression, concealment or any other alleged willful or intentional conduct."
Finally, and most importantly for our purposes here, the tobacco defendants agreed to a shift in the burden of proof for purposes of general causation. Specifically, the settlement agreement provides that:
(d) With respect to any Retained Claims seeking damages on account of lung cancer, chronic bronchitis, emphysema, chronic obstructive pulmonary disease, or chronic sinusitis, brought by a member of the Class or his or her survivor, the burden of proof as to whether Environmental Tobacco Smoke ("ETS") can cause one of the above-described diseases ("General causation") shall be borne by the Settling Defendants and the Jury shall be so instructed; in all other respects, including the issue of whether an individual plaintiff's disease was caused by ETS (specific causation"), the ordinary burdens of proof applicable to any Retained Claims shall remain unaltered. In addition, the altered burden of proof provided herein with respect to general causation shall in no way affect the ability of the Settling Defendants to introduce any evidence or argument as to general causation, specific causation, or alternative causation, or to introduce any other evidence or argument which the Settling Defendants would otherwise be entitled to present, at any future trial in which Retained Claims are brought. The Settling Defendants' agreement to alter the burden of proof as provided herein is not an admission of any sort, and shall not be construed, now or at any future trial or proceeding, as an admission of causation or any other fact or legal contention[.]
Various intervenors objected to the settlement agreement claiming, in part, that the agreement required them to retry the breach-of-duty issue. The trial court approved the settlement finding it "fair, adequate and reasonable," and that the class plaintiffs' claims taken as a whole, had a less than 50% chance of prevailing at trial.
This court affirmed the settlement agreement finding that "the trial court correctly ruled that the settlement is `fair, adequate and reasonable.'" Ramos, 743 So.2d at 31 (citations omitted). As one of many benefits in the agreement, this court specifically found that:
[a]nother substantial benefit is the burden-shifting provision. This provision establishes a "generic causation" presumption in favor of the flight attendants. Many experts opined that this provision forecloses any defense argument that there is no valid, scientific basis for a finding of causation. R. 10294-95. This benefit, in and of itself, is a significant victory for the individual plaintiffs. As the trial court noted, there was a "high likelihood ... that the jury would not find causation as to all 26 diseases.
Ramos, 743 So.2d at 32.

2. Post Settlement Flight Attendant Litigation
Following the settlement, over 3,000 flight attendants brought individual suits *484 against the tobacco defendants for the claims retained by the agreement. Faced with this multitude of suits, the administrative judge supervising the suits determined that rulings on common issues of law would be made by a single judge.[3] In May of 2000, Judge Robert Kaye, the trial judge in Broin, was appointed to rule on these common issues.
An issue arose as to which party would carry what burdens of proof in light of the Broin settlement agreement. The plaintiffs' counsel urged that "all issues in Stage I were resolved with the settlement and the only thing left to be tried is specific causation for each Plaintiff and damages." The tobacco defendants, on the other hand, claimed that although they had assumed the burden of proof on the issue of general causation each plaintiff should be required to put on witnesses and experts to prove each of the individual elements of their pled claims. Both parties briefed the issue and the court heard the arguments of counsel. Judge Kaye issued an "Order on the Courts Administration and Jurisdiction Over the Consummation of the Settlement Agreement" ruling that the burden shifting portion of the settlement agreement created, in essence, a presumption of liability in favor of the plaintiffs. Specifically, the court held that:
This Court has always been of the opinion that the spirit and intent of the Settlement Agreement was to the effect that the Retained Claims which were to be tried in individual trials, subsequent to the Settlement, were to be tried as Stage II claims.
At issue in this motion is whether Plaintiff bears the burden of proving the elements of the counts alleged in the complaint  Strict Liability, Breach of Implied Warranty, and Negligence, or whether there is a rebuttable presumption in Plaintiffs favor that shifts the burden and relieves Plaintiff of the task of proving up the elements of the counts on Plaintiffs case in chief.
* * *
Since there is a rebuttable presumption that ETS is harmful to one's health and can cause certain enumerated diseases, (generic causation) and that rebuttable presumption is in the Plaintiffs favor according to the Settlement Agreement, then that presumption resolved the issues of proving the elements of Strict Liability, Negligence and Breach of Implied Warranty, in Plaintiff's case in chief because each of those causes of action depends on proving the "generic causal effect" of ETS.
For example, Plaintiff may say that placing an unreasonably dangerous product, in an [sic] substantially unaltered condition, (a cigarette that produces ETS,) on the market, can cause one of the enumerated diseases. The presumption that ETS causes certain diseases, then is tied directly to the definition of "unreasonably dangerous," e.g.,  if ETS causes disease, (generic causation), then it is unreasonably dangerous, and that presumption is in the plaintiff's favor by the terms of the Settlement Agreement. As to Implied Warranty, the presumption in the plaintiffs favor is that the manufacturer produced a product that was not fit for the uses intended or that it was reasonably foreseeable that it was not fit for the uses intended (because it produced ETS,) and ETS can cause disease, (again, generic causation). As to Negligence, *485 the presumption in plaintiffs favor is that the defendant marketed a product that produced ETS, which causes certain diseases to a non-smoker, (generic causation) and this act by the defendant was negligence, i.e. (doing something that a reasonably careful person or entity would not do).
This does not, of course, eliminate the Plaintiff's burden of proving "specific causation", that is, that the Plaintiff's specific disease was cause by ETS, and that the Plaintiff suffered damages as a result of that disease. Issues of liability other than those referenced above, still rest with the Plaintiff.
The Defendant's burden is to disprove the generic causation issue, (that Environmental Tobacco Smoke does cause certain enumerated diseases claimed by the Plaintiff). Under the terms of the Settlement Agreement paragraph 12(d),:
"the altered burden of proof provided herein with respect to general causation ...
Shall in no way affect the ability of the Settling defendants to introduce any evidence or argument as to general causation, specific causation, or alternative causation, or to introduce any other evidence or argument which the Settling Defendants would otherwise be entitled to present, at any future trail in which Retained Claims are brought."
In view of the above, it is apparent to this Court that the upcoming individual trials referenced in the Settlement Agreement are to be conducted on the basis of being a STAGE II trial to answer the questions of whether ETS was the specific cause of the disease or injury claimed by the Plaintiff, and then to resolve the issue of damages if any.
The tobacco defendants appealed this order. We dismissed the appeal as premature "without prejudice to the defendants' ability to appeal the issue sub judice at the conclusion of the case." Philip Morris Inc. v. Jett, 802 So.2d at 356-57.

B. French's Underlying Lawsuit
French brought her suit, "pursuant to the terms of the Settlement Agreement," against the tobacco defendants seeking compensatory damages under theories of strict liability, negligence and breach of implied warranty. She claimed that she was a non-smoker, and worked as a flight attendant for Trans World Airlines ("TWA") from May 1976 through the present, and that she suffers from chronic bronchitis and sinusitis as a result of her ongoing exposure to second-hand cigarette smoke in airline cabins. The tobacco defendants answered the complaint and asserted, as affirmative defenses, that their products are not defective and did not cause or contribute to French's alleged injuries. French moved to strike these defenses on grounds that they were barred by the settlement agreement because only specific causation and damages were at issue.
The trial court, adopting Judge Kaye's order in Jett, held that French would not have to prove liability, but rather the jury had to determine two issues: 1) "can ETS cause chronic sinusitis," and 2) "did it in this case." Thus, the primary issues litigated at trial were the extent that French had been exposed to ETS during the years that smoking was permitted in the passenger areas of aircrafts, and whether such exposure caused French's chronic sinusitis.[4]
*486 Although the tobacco defendants stipulated that French suffered from chronic sinusitis, they argued that her health problems did not develop until 1995, and that her ailment was not caused by ETS. The defense experts testified that French's chronic sinusitis was caused by scarring from a sinus surgery performed in 1989, and that allergies also contributed to her overall condition. These experts also claimed that second hand smoke cannot cause chronic sinusitis, and exposure to second hand smoke does not predispose an individual to develop chronic sinusitis.
French, in contrast, presented the testimony of her treating physician, Dr. Persky. Prior to trial, the tobacco defendants moved in limine to exclude Dr. Persky's testimony under the standard set forth in Frye v. United States.[5] This motion was denied without an evidentiary hearing, with the trial court noting: "If [Dr. Persky] says he has an opinion based on reasonable medical certainty it was connected with this, even if he doesn't know what the dosage is, he can testify about the nature of the smoke."
Dr. Persky testified that he had diagnosed French as suffering from chronic sinusitis based on her symptoms which included sinus pressure, headaches, and nasal discharge. He testified that, in his clinical opinion, French's upper respiratory and sinus lining were damaged by her exposure to second hand smoke. Finally, Dr. Persky opined that exposure to ETS was the primary cause of French's chronic sinusitis.[6]
The jury was instructed as follows:
The parties stipulate that the Plaintiff, Lynn French, has a condition known as chronic sinusitis. In this case, you are to determine, one, whether exposure to second hand smoke,... can cause the disease of chronic sinusitis, and, if so, two, whether Plaintiff's exposure to second hand smoke, ... in aircraft cabins caused her chronic sinusitis, and, three, if so, what damages were sustained by her?
With respect to Plaintiff's claim of chronic sinusitis, the Defendants have the burden to prove that second hand smoke does not cause this condition.... If you find that Defendants have failed to meet their burden of proof, then you should consider the next issue.
On the next issue, the Plaintiff has the burden to prove by the greater weight of the evidence that her chronic sinusitis was caused by her exposure to second hand smoke in aircraft cabins. If the greater weight of the evidence on this claim supports the position of the Plaintiff, then you will consider the question of her damages. However, if you find that the Plaintiff has failed to meet her burden of proof on this claim, then your verdict should be for the Defendants.
The jury returned a verdict awarding French $5.5 million in damages ($2 million *487 for past, and $3.5 million for future non-economic damages).
Post trial, the tobacco defendants renewed their Frye motion with regard to Dr. Persky's testimony. In addition, they sought a new trial based on French's failure to prove each element of her strict liability, negligence and breach of warranty claims, on claims of prejudicial conduct by French's counsel, and sought alternatively, a remittitur of the verdict. Finally, the defendants also argued that the jury should have apportioned fault under section 768.81, Florida Statute.[7]
The trial court denied all of the defendants' post-trial motions, save the motion for remittitur. With regards to the shifting of the burden of proof, the court specifically found:
Although the defendants argue that the terms of the Broin settlement agreement did not foreclose their ability to require that the plaintiff prove all of the elements of her claims, I concluded that the burden-shifting provision in the Broin settlement did just that. In other words, if there is a presumption that second-hand smoke causes chronic sinusitis in non-smokers, it follows that cigarettes are presumed to be unreasonably dangerous and/or that manufacturing such a product is something that a reasonably careful person would not do.
The court acknowledges that the agreement could be interpreted differently. However, if the defendants' position were accepted, each of the 3000 flight attendants would have to prove that cigarettes are unreasonably dangerous to non-smokers, rendering the burden-shifting provision meaningless. It is more logical to conclude that in settling the class action lawsuit, the parties intended that the focus in the individually-retained claims would be on whether the plaintiff's disease was actually caused by exposure to second-hand smoke, and if so, what damages were sustained.
(Footnotes omitted.)
Although both parties opposed a market-share division of liability,[8] the trial court sua sponte found that "the only reasonable form of judgment in this case is one which apportions the damages among the defendants based on their Market share as set forth in the settlement agreement."
Finally, the court granted the defendants' motion for remittitur finding that
prejudice against the tobacco companies, a present-day popular villain, interfered with the jury's ability to assess the damages based on a reasonable view of the evidence. This prejudice was, to some extent, fed by plaintiff's counsel.
The verdict was reduced to $500,000 ($300,000 for past pain and suffering and $ 200,000 for future pain and suffering). French accepted the remittitur and the trial court entered an Amended Final Judgment allocating $250,000 to Philip Morris; $123,500 to R.J. Reynolds; $82,000 to Brown and Williamson; and *488 $44,000 to Lorillard. This appeal and cross-appeal followed.

II. The Law
The tobacco defendants claim that there are four grounds for reversal: 1) That the trial court erred in "rewriting" the settlement agreement to create a presumption of the defendants' liability; 2) That the trial court erred in admitting Dr. Persky's testimony regarding the cause of French's sinusitis, because this testimony violated the Frye standards; 3) That the prejudicial conduct of French's counsel denied the defendants a fair trial; and 4) That the trial court erred in failing to require French to establish each defendant's individual liability. French, on the other hand, argues for an affirmance except for the market share distribution of the remitted judgment. We address each of these issues separately.[9]

A. Whether the trial court erred in its interpretation and enforcement of the Broin settlement.
The trial court's construction of a contract, here a settlement agreement, is subject to de novo review. Sunhouse Constr., Inc. v. Amwest Surety Ins. Co., 841 So.2d 496, 498 (Fla. 3d DCA 2003). Courts are required to construe a contract as a whole and give effect, where possible, to every provision of the agreement. See Story v. Culverhouse, 727 So.2d 1128, 1130 (Fla. 2d DCA 1999) ("In construing the terms of a settlement agreement, a court is required to review the entire instrument and to give effect to every provision contained in that contract."). If an agreement is ambiguous, the court should follow a construction that best comports with logic, reason, and the purposes underlying the parties' agreement. See Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 629 (Fla. 4th DCA 1982) ("The court should arrive at [a contract] interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties.").
Under paragraph 12(d) of the Broin settlement agreement, the burden of proof shifted to the tobacco defendants to disprove general causation. This issue of genuine causation is the only common issue expressly preserved, in the settlement agreement, for future litigation.
The defendants' claim, however, that the plain language of paragraph 12(d) means that:
 In individual trials, defendants must bear the burden of proof on the question whether ETS "can cause" five identified diseases;
 "in all other respects," the ordinary burdens of proof are unaffected;
 Defendants may introduce any "evidence or argument" that defendants "would otherwise be entitled to present"; and
 The burden-shift on generic causation is not an admission "of any sort."
Defendants argue that the above meaning is clear from the face of the settlement agreement, and that the order in Jett, and the trial court's subsequent adoption of that order, with its rationale, violated the controlling rules of contract law. We disagree.
Where, as here, you have a contract that is ambiguous, a court is required to use a construction that best expresses the intention of the parties. See Morales v. Metro. Dade County, 652 So.2d 925, 926 (Fla. 3d DCA 1995) (holding that settlement agreement must be "interpreted in accordance with its terms and underlying *489 intent."). See also Transport Rental Sys., Inc. v. Hertz Corp., 129 So.2d 454, 456 (Fla. 3d DCA 1961) ("The real intention, as disclosed by a fair consideration of all parts of a contract, should control the meaning given to mere words or particular provisions when they have reference to the main purpose."). Moreover, even an unambiguous contract cannot be interpreted to achieve absurd results. See Am. Employers' Ins. Co. v. Taylor, 476 So.2d 281 (Fla. 1st DCA 1985) (holding contracts should be interpreted so as to avoid an absurd result). See also James v. Gulf Life Ins. Co., 66 So.2d 62, 63 (Fla.1953) ("The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation and probable contract should be adopted, and a construction leading to an absurd result should be avoided.").
At the time that the parties in Broin executed the settlement they were in the fourth month of litigating the Stage I, Phase One portion of the class action suit, litigating the common liability issues, including breach of duty. The plaintiffs had put on fifty-two (52) witnesses and had rested. The tobacco defendants had begun their defense and had presented fourteen (14) witnesses. A directed verdict motion on the issues of fraud, misrepresentation, and punitive damages was pending.
Clearly, the objective of the settlement was to eliminate issues on both sides, thereby streamlining the litigation, and putting Stage I of the flight attendants' suits to rest. The defendants' position that each individual plaintiff, over 3,000 at the time of French's trial, is required to prove and re-prove[10] breach of duty and all other elements of their tort claims (except for general causation) defies logic. The assumption that plaintiffs would agree to end six years of litigation, including a trial that had lasted nearly four months, in favor of relitigating each common liability issue (i.e. breach of duty, duty to warn, etc.) a thousand times over is an absurd result that we will not adopt. Accordingly, we affirm the findings of the trial court on this issue and hold, as the trial court did, that the intent of the parties to the settlement agreement was to focus on the individual retained claims and determine whether a "plaintiff's disease was actually caused by exposure to second-hand smoke, and if so, what damages were sustained."

B. Did the trial court abuse its discretion in admitting Dr. Persky's testimony?
Prior to trial, the defendants filed a motion in limine seeking to preclude Dr. Persky from testifying in this case. The motion was entertained at a non-evidentiary hearing, and denied. At trial, the defendants failed to renew their motion and Dr. Persky was permitted to opine that second hand smoke was a contributing cause of French's chronic sinusitis. Moreover, the defendants did not challenge the competence of Dr. Persky's testimony at the close of all the evidence. Thus, the defendants failed to preserve, and, in fact, waived this issue for appellate review. See Horne v. Hudson, 772 So.2d 556, 557-58 (Fla. 1st DCA 2000) ("In Florida, a motion in limine is not sufficient to preserve an *490 error for review if no contemporaneous objection was made at the time the evidence was offered at trial."); Rindfleisch v. Carnival Cruise Lines, Inc., 498 So.2d 488, 492 (Fla. 3d DCA 1986) ("The general rule is that a motion in limine is not sufficient to preserve the error for appellate review in the absence of further contemporaneous objection when the evidence is offered.").
Even if this issue was preserved for review, we find it to be without merit. See Castillo v. E.I. DuPont De Nemours & Co., Inc., 854 So.2d 1264, 1270-71 (Fla.2003) ("It is well-settled that an expert's use of differential diagnosis to arrive at a specific causation opinion is a methodology that is generally accepted in the relevant scientific community."). See also Rickgauer v. Sarkar, 804 So.2d 502, 504 (Fla. 5th DCA 2002) ("Pure opinion testimony does not have to meet the Frye test because it is based on the expert's personal opinion.").

C. Whether the trial court abused its discretion in failing to grant a new trial on grounds of plaintiff's counsel's alleged prejudicial conduct.
The tobacco defendants contend that "French's counsel willfully and repeatedly injected quasi-populist rhetoric and anti-business prejudice into this trial." They raised this issue in their motion for new trial and the trial court rejected it. On the appeal of such a discretionary act, this court is required to apply an abuse of discretion standard. See Murphy v. Internat'l Robotic Sys., Inc., 766 So.2d 1010, 1031 (Fla.2000) ("On appeal, the appellate court must ... apply an abuse of discretion standard in reviewing either the trial court's grant or denial of a new trial[.]"); Brown v. Estate of Stuckey, 749 So.2d 490, 498 (Fla.1999) ("Regardless of whether a new trial was ordered because the verdict was excessive or inadequate or was contrary to the manifest weight of the evidence, the appellate court must employ the reasonableness test to determine whether the trial judge abused his or her discretion.").
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). Because the trial judge is in the best position to determine the impact of French's counsel's action, and because we find the court's findings to be reasonable, we reject the assertion that this issue creates grounds for reversal.

D. Whether the trial court erred in sua sponte ordering that fault would be allocated among the defendants pursuant to the market shares provided in the settlement agreement.
On appeal, the defendants claim that the trial court erred in ruling that French did not have to establish each defendant's individual liability. On cross-appeal, French attacks the trial court's sua sponte market share allocation of liability and argues that the defendants are jointly and severally liable for their damages. The trial court handled these issues together; we will do the same. Specifically, in her order denying the defendants' post-trial motions the court wrote:
The defendants also complain that I did not require the plaintiff to prove either *491 that the cigarettes to which she was exposed were manufactured by the defendants or the extent to which each defendant contributed to the harm. It is true, as the defendants maintain, that these issues are not specifically addressed in the Broin settlement agreement. However, in settling the class action lawsuit, the defendants agreed to pay 46 million dollars in attorney's fees, at least 3 million dollars in costs, and to contribute 300 million dollars to establish a foundation to conduct research on the detection and cure of smoking related diseases. By agreement among the defendants, each contributed to these settlement amounts based on their market share as set forth in exhibit C to the settlement agreement. Certainly it could not have been contemplated by the settling parties that each individual flight attendant would have to prove precisely which cigarettes she was exposed to during the flights, that those cigarettes were manufactured by the defendants, and the extent to which her condition was caused by each defendant. Nor would it make sense to adopt what is apparently the plaintiff's position, that the judgment should be entered against the defendants jointly and severally. Although arguably the plaintiff could have offered evidence to show that the defendants should be held jointly responsible for any damages to the plaintiff, such as evidence of a conspiracy to hide information about the dangers of second-hand smoke, the plaintiff did not seek to do so. And, of course, the jury was not asked to make any such factual finding. Therefore, I conclude that the only reasonable form of judgment in this case is one which apportions the damages among the defendants based on their market share as set forth in the settlement agreement.
(Footnotes omitted).
Although we agree with the trial court that there was no conceivable way to identify every brand of cigarette smoked on the TWA flights on which French served (or the quantity of each brand smoked), we disagree with the court's market share apportionment of damages.
Florida has adopted the "Indivisible Injury Rule" to be applied when a jury cannot apportion injury.[11]See Gross v. Lyons, 763 So.2d 276, 280 (Fla.2000). This rule provides:
When the tortious conduct of more than one defendant contributes to one indivisible injury, the entire amount of damage resulting from all contributing causes is the total amount "of damages recoverable by the plaintiff[.]"
Gross, v. Lyons, 763 So.2d at 280 (quoting Piner v. Sup. Ct., 192 Ariz. 182, 188, 962 P.2d 909, 915 (1998)).
In this case the trial court found, and we agree, that there was no way to determine which and/or how much of the defendants' products contributed to French's injury. Thus, under the indivisible injury rule we find the defendants jointly and severally liable for all of French's damages.

*492 III. Conclusion

Based on the foregoing we affirm the amended final judgment to the extent that it finds in favor of the plaintiff on liability, and awards the remitted amount of damages. We reverse the final judgment's market share allocation of damages, and remand with instructions that the court enter a judgment finding the tobacco defendants jointly and severally liable for the plaintiff's injuries.
Affirmed in part, reversed in part.
NOTES
[1] Phase One of Stage One was to include testimony and evidence regarding the scientific issues of generic causation and whether the tobacco defendants were aware of the health risks of second-hand smoke. Questions to be answered by way of special interrogatories included:

A. Have the Plaintiffs proven by the greater weight of the evidence that Second Hand Smoke causes lung cancer and other Lung/Pulmonary/Sinus disease and disorders, and if so, which diseases of this subclass are caused by Second Hand Tobacco Smoke?
B. Have the Plaintiffs proven by the greater weight of the evidence the amount and duration of exposure to Second Hand Tobacco Smoke that causes such disease or diseases?
C. When did the Defendants know about the dangers of Second Hand Tobacco Smoke and whether the Defendants were aware of the threat to the safety and health of Airline Flight Attendants?
* * *
E. What, if any duty the Defendants had to warn Non-Smokers of the dangers of exposure to Second Hand Tobacco Smoke through channels of communication other than advertising or promotion.
F. Evidence and testimony concerning the issues of strict liability and implied warranty.
If the jury were to find in the plaintiffs' favor and determine that the plaintiffs were entitled to punitive damage then the trial would proceed to Phase Two on the issue of the amount of punitive damages to be awarded.
[2] The foundation was endowed to sponsor scientific research for the early detection and cure of diseases caused by cigarette smoke.
[3] The administrative judge also determined that the Jett v. Philip Morris, Inc. case would be used as the vehicle for the entry of the orders regarding these common issues of law. See Philip Morris, Inc. v. Jett, 802 So.2d 353, 354 (Fla. 3d DCA 2001).
[4] Smoking was permitted on all commercial airlines until a limited no-smoking ban was placed on the airline industry in 1988. This ban prohibited smoking on all domestic flights of two hours or less. The Federal Aviation Administration banned smoking on all flights of six hours or less in February 1990. TWA, French's employer, banned smoking an all flights from the United Kingdom, France, and Germany in March 1996, and thereafter banned smoking on all of its flights in April 1997.
[5] 293 F. 1013 (D.C.Cir.1923). This standard requires that an expert's testimony be "based on a scientific principle or discovery that is `sufficiently established to have gained acceptance in the particular field in which it belongs.' "Ramirez v. State, 651 So.2d 1164, 1166-67 (Fla.1995).
[6] The defendants did not renew their Frye motion during the course of Dr. Persky's testimony.
[7] This statute provides in pertinent part:

(3) Apportionment of damages  In an action to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
[8] The defendants argued that French had to prove each individual defendant's fault, and French argued that her injury was indivisible.
[9] Because we find that the issue on cross-appeal and the defendants' final argument are inter-related, we will address these issues together.
[10] The defendants in Broin did not move for a directed verdict on the flight attendants' strict liability, negligence, and/or breach of implied warranty counts, and thus it has been argued that the defendants have conceded the sufficiency of the plaintiffs' proof with regard to these claims.
[11] The Restatement (Second) of Torts explains that when

two or more causes combine to produce such a single harm, incapable of division on any logical or reasonable basis, and each is substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with the responsibility for the entire harm.
Gross v. Lyons, 763 So.2d at 279 (quoting Restatement (Second) of Torts § 433A(2) cmt. i. (1965)). See also Bradford v. Vento, 997 S.W.2d 713, 734 (Tex.App.1999) ("Joint and several liability is also appropriate when the tortious acts of multiple tortfeasors combine to produce a single, indivisible injury.").