983 So.2d 1165 (2008)
Carmen J. GROSSO and James Chereskin, Appellants,
v.
FIDELITY NATIONAL TITLE INSURANCE CO. and Janet Figueroa, Appellees.
Nos. 3D07-466, 3D06-2725.
District Court of Appeal of Florida, Third District.
January 16, 2008.
Rehearing and Rehearing Denied June 23, 2008.
*1167 Ferrell Law, P.A. and H. Eugene Lindsey, George G. Mahfood, and Jennifer J. Soulikias, Miami; P. Scott Russell; Pomerantz, Haudek, Block, Grossman & Gross and Robert J. Axelrod; Liggio Benrubi & Williams, West Palm Beach, for appellants.
Baker & Hostetler and Jerry R. Linscott, Robert W. Thielhelm, Jr., and Julie E. Singer, Orlando; Wites & Kapetan and Marc A. Wites, for appellees.
Before GERSTEN, C.J., and SUAREZ and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied June 23, 2008.
ROTHENBERG, J.
Carmen J. Grosso ("Grosso") and James Chereskin ("Chereskin") argue in these appeals that the trial court erred in certifying the settlement class, approving the settlement agreement, and approving the award of attorneys' fees and costs issued in the class action lawsuit brought by Janet Figueroa ("Figueroa") against Fidelity National Title Insurance Company ("Fidelity National"). We agree and reverse.
These appeals arise out of three competing class action lawsuits: (1) the lawsuit filed by Figueroa in Miami-Dade County against Fidelity National on April 20, 2004; (2) the lawsuit filed by Grosso in Broward County against Fidelity National Title Insurance Company of New York ("Fidelity N.Y.") on August 24, 2004; and (3) the lawsuit filed by Chereskin in Nassau County against Fidelity N.Y. on September 21, 2004. When Figueroa filed her class action lawsuit, Fidelity National and Fidelity N.Y. were separate entities. During the pendency of the litigation, Fidelity *1168 National and Fidelity N.Y. merged, with Fidelity National assuming the obligations of Fidelity N.Y.
Despite this merger, Figueroa amended her complaint twice without attempting to expand her class action lawsuit to include the Fidelity N.Y. plaintiffs, and she continued to litigate solely against Fidelity National. Moreover, Fidelity N.Y. continued to defend itself in the Grosso and Chereskin class action lawsuits and, in fact, filed a motion in Nassau County to stay the Chereskin litigation, pending disposition of the Grosso action. Fidelity N.Y. did not move to stay the Chereskin litigation pending the Figueroa action, did not claim that the Figueroa action had priority over the Chereskin and Grosso actions, and did not suggest that it no longer existed due to its merger with Fidelity National. In fact, after the merger, Fidelity National and Fidelity N.Y. continued to defend these class action lawsuits as if they were two separate entities.
On January 20, 2005, Figueroa filed her third amended complaint. Subsequently, without notice to the Grosso and the Chereskin plaintiffs, Figueroa: (1) amended her complaint to expand her class action lawsuit against Fidelity National to include the Fidelity N.Y. plaintiffs; (2) negotiated with Fidelity National to settle the claims against both Fidelity National and Fidelity N.Y.; (3) entered into a settlement agreement with "Fidelity," which was defined in the agreement to include both Fidelity National and Fidelity N.Y.; and (4) received class certification and preliminary approval of the settlement agreement from the Miami-Dade Circuit Court. Fidelity National then sought and obtained stays in Broward and Nassau Counties in the Grosso and Chereskin class action lawsuits. It is only then that the Grosso and Chereskin plaintiffs learned that their claims were being settled in Miami-Dade County.
Both Grosso and Chereskin moved to intervene and to replace class counsel in the Figueroa action, but the Miami-Dade trial court denied their motions. Although Chereskin was not permitted to file his objections because the trial court found that he lacked standing, Grosso filed his objections, a Fairness Hearing was conducted, and the trial court issued its final order certifying the class, approving the settlement, and awarding attorneys' fees and costs.

THE LAWSUITS
In all three class action lawsuits, it is alleged that the plaintiffs, title insurance purchasers, were overcharged by the applicable Fidelity entity (Fidelity National or Fidelity N.Y.) and/or their agents in connection with the refinancing of their real estate transactions in Florida from April 20, 1999, through November 29, 2005.
In 1999, the Florida Legislature enacted legislation for title insurance premium rates, specifying the amounts to be charged when issuing a new policy ("original rates") and when reissuing a policy ("reissue rates"). The reissue rates established by the Legislature are substantially lower than the original rates. See § 627.7825(1), (2), Fla. Stat. (1999); see also Fla. Admin. Code R. 69O-186.003 (providing for the same original rates and reissue rates that were codified in subsections 627.7825(1) and (2) of the Florida Statutes from 1999 through 2002). Title insurance companies and their agents are required to charge the rates specified by statute and set by the Florida Insurance Commission.
All three complaints allege that the applicable Fidelity entity and/or its agents charged the plaintiffs the higher original *1169 rates when reissuing their title insurance rather than the required lower reissue rates. Grosso estimates that from 1999 to 2004, the Fidelity entities improperly issued 185,288 lender policies in Florida at the original rates instead of the reissue rates, and that the overcharges to class members are in excess of $45 million.
The Figueroa complaints allege that Figueroa purchased her title insurance through an agent of Fidelity National. Figueroa initially alleged causes of action for unjust enrichment, breach of contract, breach of a third-party beneficiary contract, and breach of implied contract. Figueroa's contract claims, however, were dismissed without prejudice, and therefore, when she entered into the settlement agreement, only the unjust enrichment claim remained.
Grosso's complaint alleges that he purchased a title insurance policy from Fidelity N.Y. through its agent, Home Title Agency, Inc. The Grosso complaint alleges a cause of action against Fidelity N.Y. for unjust enrichment.
Chereskin's complaint alleges that he purchased a title insurance policy through an agent of Fidelity N.Y., and his complaint alleges causes of action against Fidelity N.Y. for unjust enrichment, breach of contract, and breach of a third-party beneficiary contract. Unlike Figueroa, Chereskin's contract claims are still pending.

THE SETTLEMENT AGREEMENT
The settlement agreement identifies the settlement class as all persons and entities who, during the "class period," either purchased title insurance from Fidelity National or Fidelity N.Y. (referred to in the agreement as "Fidelity") in Florida, or who purchased title insurance from "Fidelity" and live in Florida, and the policies were issued at the original rate when they were entitled to the reissue rate. Pursuant to the settlement, "Fidelity" is required to establish a fund of $1,405,025 to satisfy potential claims of the class. The class members who purchased their title insurance directly from Fidelity National or Fidelity N.Y. are to receive 75% of the overcharge, whereas those class members who purchased their policies from an agent of Fidelity National or Fidelity N.Y. are to receive only 75% of the overcharge Fidelity National and Fidelity N.Y. actually received. Thus, the class members who purchased their policies through either of the entities' agents, are to receive a reimbursement of only 22.5% of the overcharge, whereas, those who purchased their policies directly from the Fidelity entities, are to receive reimbursements of 75% of the overcharge. Figueroa, who purchased her policy from a "Fidelity" agent, and under the terms of the agreement would be entitled to receive only 22.5% reimbursement, which would amount to just a few dollars, is to receive, pursuant to the settlement agreement, $5,000 which is roughly one hundred times greater than what the other similarly situated class plaintiffs will receive.
Additionally, the attorneys handling the Figueroa lawsuit will receive $500,000 in fees.

CLASS CERTIFICATION
The threshold requirements for class certification are outlined in Florida Rule of Civil Procedure 1.220. A class action may only be certified after the court determines that: (1) there is sufficient numerosity of class members; (2) there is commonality of the claims or defenses of the named class representative and each member of the class; (3) the claims or defenses of the class representative are typical of that of the class; and (4) the *1170 class representative can fairly and adequately represent the interests of each member of the class. Fla. R. Civ. P. 1.220(a); Ortiz v. Ford Motor Co., 909 So.2d 479, 481 (Fla. 3d DCA 2005); Braun v. Campbell, 827 So.2d 261, 266 (Fla. 5th DCA 2002).
Rule 1.220(d)(1) also directs that "[a]s soon as practicable after service of any pleading alleging the existence of a class . . . after hearing the court shall enter an order determining whether the claim . . . is maintainable on behalf of a class." Fla. R. Civ. P. 1.220(d)(1). "Deliberately delaying a class certification determination does not represent an effort to resolve the issue `as soon as practicable.'" In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 787 (3d Cir.1995) (quoting Fed.R.Civ.P. 23(c)).
Because the certification of a class and settlement of the class representative's claims will ultimately bind absentee class members, there are constitutional due process implications which must be satisfied. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 377-78, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). Therefore, the trial court, and this Court must conduct a rigorous analysis to determine whether the elements of the class action requirements have been satisfied. Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995).
Where the parties, as here, seek certification of the class and approval of their settlement simultaneously, the trial court is required to apply heightened scrutiny and to take a more active role as a guardian of the interests of the absent class members. When a trial court "certifies for class action settlement only, the moment of certification requires `heightene[d] attention,' to the justifications for binding the class members . . . because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save the final fairness hearing." Ortiz v. Fibreboard Corp., 527 U.S. 815, 848-49, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (citation omitted) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (alteration in original)); see also Simer v. Rios, 661 F.2d 655, 664-66 (7th Cir.1981) (requiring a higher showing of fairness where the settlement is negotiated prior to certification); Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 33 (3d Cir.1971) (holding that the court must be doubly careful where negotiation occurs before certification and designation of class counsel).[1]
The danger with certifying a class after settlement negotiations have taken place is that the trial court's ability to protect the interests of the absentee class members, is compromised. "With less information about the class, the judge cannot as effectively monitor for collusion, individual settlements, buy-offs (where some individuals use the class action device to benefit themselves at the expense of absentees), and other abuses." In re Gen. Motors Corp., 55 F.3d at 787. "In effect, settlement classes can, depending how they are used, evade the processes intended to protect the right of absentees." Id. at 788. "The problem . . . is . . . the possibility that fiduciary responsibilities of class counsel or class representatives may have been compromised." Id. (quoting Manual for Complex Litigation (Third) (draft), 193).
The Third Circuit Court of Appeals warned in In re Gen. Motors Corp. that:

*1171 In particular, settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action. Moreover, because the court does not appoint a class counsel until the case is certified, attorneys jockeying for position might attempt to cut a deal with the defendants by underselling the plaintiffs' claims relative to other attorneys. Unauthorized settlement negotiations occurring before the certification determination thus "create the possibility of negotiation from a position of weakness by the attorney who purports to represent the class."
. . . .
In addition, unauthorized negotiations also result in denying other plaintiffs' counsel information that is necessary for them to make an effective evaluation of the fairness of any settlement that results.
In re Gen. Motors Corp., 55 F.3d at 788 (footnote omitted).
In the instant case, Figueroa and Fidelity National entered into a settlement agreement before Figueroa sought class certification. In fact, the record reflects that upon executing a settlement agreement with Fidelity National, Figueroa immediately sought preliminary approval of the settlement and class certification, all in the same action. The trial court, therefore, was required to apply heightened scrutiny before approving either. This heightened scrutiny was especially important in this instance as: (1) Figueroa expanded the class by re-identifying the defendant in the lawsuit to include Fidelity N.Y. and by including all transactions conducted by Fidelity N.Y. during the relevant time period; (2) Figueroa failed to give notice to the Fidelity N.Y. plaintiffs litigating their own class action lawsuits against Fidelity National, which was a separate corporate entity unaffiliated with Fidelity National at the time of the overcharges; (3) Figueroa failed to give notice to class counsel litigating against Fidelity N.Y.; (4) the settlement agreement substantially limits Fidelity National's and Fidelity N.Y.'s liability to $1.4 million, where their combined potential liability is $45 million; (5) the settlement agreement substantially reduces the recovery of damages of those members of the class who dealt with the agents of these companies rather than the company directly, to only 22.5%; (6) Figueroa's recovery, even though she dealt with an agent, not the company directly, is one hundred times greater than the other similarly situated plaintiffs; and (7) Figueroa's lawyers are to be paid $500,000 in attorneys' fees.

A. Failure to apply heightened scrutiny in certifying the class
Instead of applying heightened scrutiny, the trial court granted preliminary approval of the settlement and certified the class without performing a rigorous analysis; adopted findings based primarily upon stipulations and agreement between Figueroa and "Fidelity"; and failed to detail the specific facts upon which its findings were made. See Braun, 827 So.2d at 266 (noting that pursuant to rule 1.220, the trial court's conclusions should be supported by facts articulated in the order).
The trial court's finding regarding numerosity was made pursuant to the stipulation of Figueroa and "Fidelity." In determining commonality, the trial court failed to address the separate sub-classes of the class, despite the fact that one sub-class is to receive 75% of its losses, whereas the other sub-class is to receive only 22.5% of its losses.
*1172 Adequacy was based upon Figueroa's deposition and "the unquestioned adequacy of Class counsel." This finding is of course troublesome as Grosso, Chereskin, and their respective class members were not included in the negotiations and were not notified regarding Figueroa's expansion of her class to include them, Figueroa's settlement of their claims, or of the hearing to certify the class and to approve the settlement. It is clear that had they known, they would have objected, as both Grosso and Chereskin attempted to intervene and to object when they learned that Figueroa had expanded her class action to include them and had obtained preliminary approval to settle their claims at an amount far below "Fidelity's" liability. The trial court, however, denied their request to intervene, and only allowed Grosso to object at the Fairness Hearing.

B. Improper expansion of the class
In addressing Figueroa's expansion of the settlement class, the trial court noted Figueroa's inclusion of two additional circumstances where people were not provided with the requisite more favorable reissue rates, but failed to note Figueroa's expansion of the named corporate defendant and the plaintiffs entitled to recover against that defendant, namely Fidelity N.Y. and the Fidelity N.Y. plaintiffs.
The trial court's failure to address the expansion of the class to include Fidelity N.Y. before certifying the class and granting preliminary approval of the settlement, is, however, not attributable to the trial court. Despite their merger on July 30, 2004, Fidelity National and Fidelity N.Y. continued to litigate as separate entities for a year and a half, with Fidelity National litigating against Figueroa in the Miami-Dade class action lawsuit, and Fidelity N.Y. litigating against Grosso in Broward County and against Chereskin in Nassau County in their class action lawsuits.
The record reflects that the Grosso and Chereskin plaintiffs were, in fact, actively misled by Fidelity N.Y. and Fidelity National into believing that their claims were separate from Figueroa's claims against Fidelity National. In a further successful attempt to keep the Grosso and Chereskin plaintiffs and the trial court in the dark regarding Figueroa's expansion of her class action lawsuit and the settlement negotiations, Figueroa did not notify the plaintiffs suing Fidelity N.Y. that she was expanding her class action to subsume theirs. Because the Grosso and Chereskin plaintiffs were purposely kept in the dark, they were unable to object to the proceedings, the certification of the expanded class, Figueroa being named as the class representative, or the preliminary approval of the settlement of their claims. It is of no great surprise that, without any objection being levied, the trial court certified the expanded class and granted preliminary approval of the settlement.
Figueroa, Fidelity National, and Fidelity N.Y. argue that due to the July 30, 2004 merger, Fidelity N.Y. was subsumed by Fidelity National, thus rendering the Grosso and Chereskin actions legally unsupportable. This argument is, however, inconsistent with Fidelity N.Y. and Fidelity National's actions, which under the doctrine of judicial estoppel, are legally untenable. "A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party." Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1066 (Fla. 2001) (quoting Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610 (1934)). By actively litigating as Fidelity N.Y. in the *1173 Grosso and Chereskin actions, and as Fidelity National in the Figueroa action, and in successfully preventing the Grosso and Chereskin plaintiffs and their counsels from becoming aware of and objecting to expansion of the Figueroa class action lawsuit to the detriment of the Grosso and Chereskin plaintiffs, Fidelity National and Fidelity N.Y. are estopped from claiming that their merger renders the Grosso and Chereskin actions unsupportable.

C. Appointment of Figueroa as class representative
The order certifying the class and appointing Figueroa as the class representative is devoid of any analysis or findings that she can and will fairly and adequately represent the interests of each member of the class, as is required by Rule 1.220(a)(4). This deficiency is especially important where Figueroa, as the class representative, is to receive $5,000, which is approximately one hundred times greater than what the other class members she is charged with representing will be receiving. Additionally, because class certification was sought after a settlement was reached, heightened scrutiny was required.
We, therefore, conclude that because Figueroa expanded the class without notice to the expanded class and class counsel, settled the expanded class action before seeking certification of the class, and was to receive a payout far in excess of the class members, the trial court erred in failing to apply heightened scrutiny, to make specific findings, and to articulate the facts upon which it relied in certifying the class and in accepting Figueroa as the class representative.
A named class representative and his or her counsel serve the class in a fiduciary capacity because class plaintiffs undertake the litigation to protect and benefit the dependent class members they serve. Masztal v. City of Miami, 971 So.2d 803 (Fla. 3d DCA 2007) (citing Maxwell v. First United Bank, 782 So.2d 931, 934 (Fla. 4th DCA 2001)). The relationship between the class and class representatives must be free from conflicts of interest, and the adequacy analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Because Figueroa is to receive payment at approximately one hundred times the value of her claim as a member of the putative class, and where her interest may be focused on obtaining a large recovery for herself, the trial court was required, but failed to scrutinize, whether Figueroa's incentive to settle was influenced by her own personal gain.

APPROVAL OF THE SETTLEMENT
To approve a class action settlement, the trial court must find that the agreement was fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(1)(C); Ramos v. Philip Morris Cos., 743 So.2d 24, 31 (Fla. 3d DCA 1999). There are a number of factors which should be considered in making this determination. See Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir.1984). Some of the factors include: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant *1174 risks of litigation. In re Gen. Motors Corp., 55 F.3d at 785.
When Grosso and Chereskin learned that Figueroa had extended her class action lawsuit to include their claims against Fidelity N.Y. and was attempting to resolve the claims against both Fidelity entities for $1.4 million, they objected, moved to intervene, and filed objections before the Fairness Hearing. Grosso and Chereskin objected to Figueroa representing the class and to the settlement itself.
We find the objections to Figueroa as the class representative to resolve the claims against Fidelity N.Y. to be well-taken, and conclude that the trial court erred in failing to consider them. We also find that based upon the circumstances, some of which are addressed in this opinion, it was error to approve the class action settlement presented by Figueroa.
As stated earlier, Figueroa did not sue or serve Fidelity N.Y. when she commenced her class action lawsuit; failed to amend her complaint twice to include Fidelity N.Y. despite the merger of Fidelity National and Fidelity N.Y.; did not allege that she purchased title insurance from Fidelity N.Y. or an agent of Fidelity N.Y.; and never claimed that her action had priority over the Grosso or Chereskin actions until she obtained preliminary approval of the settlement and had the class certified.
Additionally, Grosso claims that "Fidelity's" exposure is $45 million. Figueroa, however, entered into a settlement agreement to resolve the claims against both Fidelity entities for only $1.4 million. Although Figueroa's expert, Victor Diaz, testified that the settlement amount appeared to be fair, he admitted that the Miami-Dade circuit court's ruling dismissing Figueroa's contract claims affected the value of the case and, thus, his opinion regarding the reasonableness of the settlement. Mr. Diaz stated that had the contract claims not been dismissed, "Fidelity's" liability would have been greater and the settlement amount would not have been fair.
Victor Diaz's testimony highlights the inadequacy of Figueroa's representation of the expanded class and of the settlement itself. The Broward and Nassau County circuit courts have not limited the Grosso and Chereskin class action lawsuits against Fidelity N.Y. to claims for unjust enrichment. The Chereskin complaint includes contract claims, and there is nothing prohibiting Grosso from amending his complaint to include a breach of contract claim. Thus, the settlement binding the plaintiffs in the Grosso and Chereskin class action lawsuits is inadequate and unfair even in the opinion of Figueroa's own expert.
The trial court also erred in failing to consider Figueroa's commitment to the class. She stands to profit far in excess of that of the class members she represents by settling the lawsuit. While similarly situated class members will receive, on an average, only seven dollars, Figueroa has been promised $5,000.

THE NOTICE ISSUE
Grosso and Chereskin argue that the settlement notice failed to provide the class members with essential information, and was, in fact, misleading. We agree. The notice suggests that everyone who was overcharged when their title insurance premium was reissued will receive 75% of the overcharges, and makes no distinction between those who purchased their policies from an agent or those who purchased their policies directly from either of the Fidelity entities. However, class members who purchased their policies from an agent will only receive 22.5% of their damages, and must sue their agent directly for the remainder. Since the amount of an individual's *1175 damages is low and for many, the statute of limitations has run, further recovery is a nullity.
The notice also fails to disclose the fees and costs to be awarded Figueroa's attorneys. The settlement provides that they are to receive $500,000 in fees. See Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir.1980) (holding that the reviewing court "must require that notice be given to the class of the proposed attorneys' fees as well as the rest of the settlement agreement and afford anyone who objects an opportunity to be heard").
Reversed.
NOTES
[1] Rule 1.220 is based on Federal Rule of Civil Procedure 23. Therefore, Florida courts may look to federal cases as persuasive authority. Braun, 827 So.2d at 266 n. 4.