SHEPHERD, J.,
concurring in part, and dissenting in part.
The majority reverses the order certifying the class in this case to give the litigants a second chance to prove they are wealthy enough to serve as adequate representatives of the class. Although the ability and willingness of a class representative to finance the litigation is relevant to determining adequacy, see 5 Jerold S. Solovy, et al., Moore’s Federal Practice § 23.25[2][d][i] (3d ed. 1997), I have deep reservations about making wealth a feature of a class determination. See Chi- *361 solm v. TranSouth Fin. Corp., 194 F.R.D. 538, 555 (E.D.Va.2000) (“A test based upon the possession of deep financial reserves doubtless would render this class without any representative.”). For decades, it has been ethically acceptable and the usual practice for counsel to fund the costs of class litigation. See Moore’s, supra at § 23.25[2][d][iv]. Examples abound where class counsel have invested more and gained more than the litigants in such circumstances.
In my view, the class representatives and their counsel have proven themselves unqualified to prosecute this action on a more substantial ground — taking five years to get to this point. This is reason enough to reverse the order certifying the class without further labor below.
Florida Rule of Civil Procedure 1.220(d) requires a determination whether a claim or defense is maintainable on behalf of a class “[a]s soon as practicable after service of any pleading alleging the existence of a class.... ” The complaint in this case was filed on June 9, 2003. The action thereafter has progressed in fits and starts. The potential for class treatment surfaced early. On July 1, 2003, three weeks after filing the complaint, counsel for the plaintiffs — the same ones before us today — filed their first motion to amend the complaint to add class allegations. Just sixty days later, on September 4, 2003, counsel filed a notice of voluntary dismissal of the motion citing, without explanation, the existence of a “pending motion to dismiss.” More devoted counsel might have elected to dispatch the pending motion by exercising their unilateral right to file an amended class action complaint before a responsive pleading was filed. See Fla. R. Civ. P. 1.190(a).
It was not until March 21, 2005, a full eighteen months later, that counsel refiled their motion to add class action allegations. After setting and resetting the motion for hearing nine times — none at the request of the State — the second motion to add class action allegations was finally granted on January 13, 2006. The State promptly answered the amended class action complaint just two weeks later. A year and nearly four months after that, on May 2, 2007, to be exact, the class representatives and their counsel moved the trial court for class certification. That motion was heard the following year, on March 12, 2008, and the order granting class certification was signed by the trial judge on June 6, 2008, almost five years to the day after the action was filed. The glacial pace at which the plaintiffs and their counsel advanced this case to a certification determination makes a mockery of the “as soon as practicable” requirement of Rule 1.220(d).
The plaintiffs-appellants seek to excuse their delay in moving expeditiously toward class certification on the ground that — by objections to interrogatories provided to the plaintiffs in December 2003 — the State misled the plaintiffs regarding the feasibility of discovering the number of corporations that paid the late fees and reinstatement fees at issue by stating it would need to create a special computer program to generate the information requested. According to the plaintiffs, the truth did not emerge until March 12, 2007, when they finally elected to take their first deposition in the case, that of E.P. Jay Kassees, the Director of the Division of Corporations, who testified a special program was not needed. This excuse rings legally hollow on many levels, including the fact that the State revealed in these same interrogatory responses that from 1999-2003 between 130,000 and 160,000 registered Florida corporations received second or “late notices” for failure to timely pay their annual corporate renewal fee. This data alone suggests that numerosity was not likely to be *362 an issue in this class action case, and indeed it has not. See, e.g., Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir.1995) (noting numerosity is presumed at a level of forty members (citing 1 Newberg On Class Actions 2d § 3.05 (1985 ed.))); Smith v. Glen Cove Apartments Condominiums Master Ass’n, 847 So.2d 1107, 1109-10 (Fla. 4th DCA 2003) (finding sufficient a class of more than 100). In addition, class actions existed long before computers. Counsel’s failure to follow up on these answers for more than three years calls into question their interest, and therefore their adequacy, in pursuing and protecting the interests of the unnamed class members.[11]
The requirement of diligence in the pursuit of class certification is not a matter of mere judicial window dressing. Failure to timely certify prejudices putative class members by delaying recovery of funds to which they are ostensibly entitled. Delaying certification can foster a false sense of security in claimants who may sit on their rights in the mistaken belief they are being protected by the class counsel. If class certification ultimately is denied, the ability of putative class members to proceed thereafter might be barred or hindered.[12] Defendants, too, are entitled to know at the earliest practicable date whether they will be facing a limited number of known plaintiffs or a much larger mass of generally unknown plaintiffs. As then United States Court of Appeals Judge Kenneth Starr wrote in McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C.Cir.1984), a vintage case arising out of the 1971 “May Day” demonstrations throughout Washington, D.C. in protest against the Vietnam War, where the plain *363 tiffs moved for certification more than three years after filing of the class complaint:
Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. That is particularly true where, as here, the defendants were facing either thirty-nine named plaintiffs or a class of almost two hundred times the number of the original plaintiffs. Second, these rules foster the interests of judicial efficiency, as well as the interests of the parties, by encouraging courts to proceed to the merits of a controversy as soon as practicable. That, at bottom, is a matter of simple justice. As previously described, plaintiffs’ three-year delay in moving for class certification indisputably thwarted these policies.
Similarly here, it took the plaintiffs five years from July 1, 2003, the date class treatment was first a gleam in the eye of class representatives, another year and a half (March 21, 2005) before the class representatives were motivated a second time to seek aggregation, then three more years almost to the day (March 12, 2008) before the class certification hearing was finally held, and another three months before the order certifying the class — the order pending review here — finally was entered. The putative class includes claimants extending back as far as nine years. After five years of litigation, the class representatives and their counsel have yet to prove they have satisfied all of the legal criteria necessary for certification. All of this bears strongly on the representation the class members are likely to receive in the future.
Although the class representatives and their counsel would like to lay the blame for their dawdling on the State, a cursory review of the record suggests purposeful dithering by the class representatives and their counsel. The docket reflects this case simply lumbered along for the first four years of its existence. Then, at a summary judgment hearing held during the summer of 2007, the trial judge held the charges at issue were, in fact, “fines” within the meaning of Article I, section 17 of the Florida Constitution, leaving but one remaining constitutional question — whether they were “excessive.” The progress of the case increased accordingly. Within weeks after the ruling was reduced to writing on September 4, 2007, class counsel sought to amend its one-count declaratory class complaint to “clarify” for the first time that, if successful, they intended to seek an award of “monetary (compensatory) damages, [and a] refund in favor of Plaintiffs and the class on all claims.” It was during this same period that counsel also finally sought a hearing to certify the class that for years had been in their contemplation. While this burst of activity was commendable, one might reasonably conclude from these events that class counsel in this case are nothing more than fair weather counsel. Fair weather counsel are not, in my estimation, adequate counsel. “Deliberately delaying a class certification determination does not represent an effort to resolve the issue ‘as soon as practicable.’ ” Grosso v. Fid. Nat’l Title Ins., 983 So.2d 1165, 1170 (Fla. 3d DCA 2008) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 787 (3d Cir.1995)). There is reason to believe that is precisely what occurred in this case.
Federal courts are not reticent to deny class certification motions where class representatives and their counsel are not diligent. This is so even where local rules do *364 not seek to manage class certification with deadlines for filing a certification motion.[13] See Andrews v. Bechtel Power Corp., 780 F.2d 124, 131 (1st Cir.1985) (trial court did not abuse its discretion by limiting class due to “inexcusably long [three year] delay in the prosecution of plaintiffs’ case”); Dudo v. Schaffer, 91 F.R.D. 128, 136 (E.D.Pa.1981) (denying class certification where plaintiffs failed to move for class certification for eleven-and-a-half months after class action discovery was completed); In re Folding Carton Antitrust Litig., 88 F.R.D. 211, 214-15 (N.D.Ill.1980) (denying class certification where proposed class representatives failed to file motion to certify until four years after start of antitrust litigation and two-and-a-half years after denial of prior motion to certify); Clanton v. Orleans Parish Sch. Bd., 72 F.R.D. 164, 167 (E.D.La.1976) (filing motion for class certification two years after first motion for class certification was denied and six weeks before trial court found “not good faith compliance with the spirit of [Federal Rule of Civil Procedure 23(c)(1) ]”). Actual prejudice need not be shown. See Folding Carton, 88 F.R.D. at 214 (citing E. Tex., 431 U.S. at 395, 97 S.Ct. 1891).
We likewise should not be reticent to fully reverse the class certification order in this case. Whether measured from the date of the filing and withdrawal of the first motion to add class allegations, the date of the filing of the second such motion, or the date that motion finally was granted on January 13, 2006, the class representatives and their counsel have utterly failed the diligence prong of Rule 1.220(d) in this case. Because they have failed to demonstrate “the forth-rightness and vigor with which the representative party [should] be expected to assert and defend the interests of the class, so as to assure them due process[,]” Mersay v. First Republic Corp. of Am., 43 F.R.D. 465, 470 (S.D.N.Y.1968), the order certifying the class should be reversed without leave to conduct further proceedings.

. Courts and commentators have long recognized the existence of an overlap between the federal counterparts to Florida Rule of Civil Procedure 1.220. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting tendency of commonality and typicality to merge with adequacy); In re Vesta Ins. Group, Inc., Secs. Litig., 1999 WL 34831475, *1 (N.D.Ala. Oct. 25, 1999) (noting "considerable overlap among [all] Rule 23(a) requirements”); In re Commercial Tissue Products, 183 F.R.D. 589, 593 (N.D.Fla.1998) (noting overlap between Federal Rule of Civil Procedure Rule 23(a) requirements and Rule 23(b)(3)); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (noting tendency of commonality, typicality and adequacy to merge); see generally Moore’s, supra at § 23.20. The analysis made here could just as well have been made under Florida Rule of Civil Procedure 1.220(a)(4), which requires the class proponent to demonstrate that "the representative party can fairly and adequately represent the class.” (emphasis added). See Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 130 (5th Cir.2005) ("The 'long established standard’ for the adequacy determination ... requires 'an inquiry into ... the zeal and competence of representatives' counsel. .. .” (quoting Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir.2001))); see also Evans v. IAC/Interactive Cotp., 244 F.R.D. 568, 577 (C.D.Cal.2007) (holding that in determining adequacy, "courts may consider the actual progress of the proceedings to that point. Delays in seeking class certification, a failure timely to prosecute the litigation, and any failure to comply with reasonable disclosure obligations or discovery requests are factors that suggest the class representative is inadequate” (citing E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 404-05, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977))).

. Although the statute of limitations typically is tolled for asserted class members who later file actions of their own from the time a class complaint is filed to the time certification is denied, this temporal forgiveness extends only so long as the claims filed in the latter complaint are the same as filed in the earlier complaint. Hromyak v. Tyco Int’l, Ltd., 942 So.2d 1022 (Fla. 4th DCA 2006) (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554-55, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). As indicated by the majority, the extent of the claims in this case have been hotly contested over the years.

. Electronically assisted research reveals that twenty-eight of the ninety-four United States District Courts have adopted class action management rules that include deadlines for filing certification motions. See E.D. & W.D. Ark. R. 23.1(3), 26.1(13); C.D. Cal. R. 23-3; D. Conn., Standing Order on Scheduling in Civil Cases, 2(b) (Dec. 2007), available at http://www.ctd.uscourts.gov/; D.D.C. R. 23.1; M.D. Fla. R. 4.04(b); N.D. Fla. R. 23.1(b); N.D. Ga. R. 23.1(B); S.D. Ga. R. 23.2; N.D. Ind. 23.1(b); S.D. Ind. R. 23.1(b); N.D. & S.D. Iowa Civ. R. 23(a); D. Kan. R. 23.1(b); E.D. & M.D. & W.D. La. R. 23.1B; W.D.N.Y. R 23(d); M.D.N.C. Civ. R. 32.1(b); N.D. Oh. Civ. R. 23.1(c); E.D. Pa. R. 23.1(c); M.D. Pa. R. 23.3; M.D. Tenn. R. 23.01(b); N.D. Tex. R. 32.2; W.D. Tex. Civ. R. 23; D. Utah Civ. R. 23-1 (d); D. Vt. R. 23.1(c); W.D. Wash. Civ. R. 23(f)(3). In most cases, the deadline is ninety days, usually subject to extension, if necessary, to allow the parties to gather information necessary to make the certification decision. In each of the cases next cited, the United States District Court had not adopted a deadline for filing a motion or the certification motion preceded the adoption of a deadline by that court.