NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SEAN J. GRIFFITH,                          )
                                           )
            Appellant,                     )
                                           )
v.                                         )          Case No. 2D17-3160
                                           )
QUALITY DISTRIBUTION, INC.; GARY R.        )
ENZOR; THOMAS R. MIKLICH; RICHARD          )
B. MARCHESE; ALAN H. SCHUMACHER;           )
ANNETTE M. SANDBERG; APAX                  )
PARTNERS LLP; APAX VII-A L.P.; APAX        )
VII-B L.P.; APAX VIII-I L.P.; APAX VIII-2  )
L.P.; GRUDEN ACQUISITION, INC.;            )
GRUDEN MERGER SUB, INC.; and               )
RICHARD DELMAN, on behalf of himself       )
and all others similarly situated,         )
                                           )
            Appellees.                     )
_____)

Opinion filed July 13, 2018.

Appeal from the Circuit Court for
Hillsborough County; Steven Scott
Stephens, Judge.

Adam M. Schachter and Christian G.
Montelione of Gelber Schachter &
Greenberg, P.A., Miami; and Anthony A.
Rickey of Margrave Law LLC, Georgetown,
Delaware, for Appellant.

Ernest J. Marquart of Schumaker, Loop &
Kendrick, LLP, Tampa; and Peter L.
Simmons of Fried, Frank, Harris, Shriver &

Jacobson, LLP, New York, New York,
for Appellees Qualify Distribution, Inc.;
Gary R. Enzor; Thomas R. Miklich;
Richard B. Marchese; Alan H. Schumacher;
and Annette M. Sandberg.

Bryan D. Hull and J. Carter Anderson of
Bush Ross, P.A., Tampa; and Edward P.
Welch and Jenness E. Parker of Skadden,
Arps, Slate, Meagher & Flom LLP, Wilmington,
Delaware, for Appellees Apax Partners LLP;
Apax VIII-A L.P.; Apax VIII-B L.P.; Apax
VIII-I L.P.; Apax VIII-2 L.P.; Gruden
Acquisition, Inc.; and Gruden Merger Sub,
Inc.

John F. Keating, Jr., of The Brualdi Law
Firm, P.C., New York, New York; and
Kenneth J. Vianale and Julie Prag Vianale
of Vianale & Vianale LLP, Boca Raton,
for Appellee Richard Delman.

MORRIS, Judge.

Sean J. Griffith appeals an order certifying a class and approving a class action settlement in a case brought by shareholders of Quality Distribution, Inc. (Quality), against the corporation for breach of fiduciary duty and failure to disclose relevant information relating to a proposed acquisition by Apax Partners, LLC (Apax). We have jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(1)(A) and 9.130(a)(3)(C)(vi). We affirm the trial court's certification of the class without further comment; however, we reverse the trial court's approval of the class action settlement and the denial of Griffith's request for fees.

**I. Background**

On May 6, 2015, Quality, a Florida corporation, announced that it had entered into a merger agreement whereby Apax would acquire Quality for $16 per share

- 2 -

of its publicly-traded stock. This price "represent[ed] an approximate premium of . . . 62% to the $9.85 closing price per share" on May 5, 2015, the day before the merger was announced. The transaction was valued at $800 million, including the assumption of Quality's debt by Apax. On June 8, 2015, Quality filed a preliminary proxy statement with the Securities and Exchange Commission (SEC).

On June 17, 2015, Richard Delman, a shareholder of Quality, filed a class action complaint against Quality, its board members, and Apax. Delman alleged a count against the board members for breach of fiduciary duties, a count against Quality and the board members for failure to disclose, and a count against Apax for aiding and abetting in the breaches of fiduciary duties. Delman alleged that Quality and its board members engaged in a flawed sale process and agreed to an inadequate sale price. Delman also alleged that Quality and its board members failed to include in the proxy statement information that is material to the shareholders' decisions on whether to approve the merger.

On July 24, 2015, Delman filed a motion for preliminary injunction. Also in July, Quality filed a definitive proxy statement with the SEC and the parties began to engage in expedited discovery. Quality and Apax agreed to produce additional documents, and Delman conducted two depositions, one of Quality's chief executive officer and one of an executive from Quality's investment banker, RBC Capital Markets, LLC (RBC). The parties engaged in settlement negotiations, and Delman notified the court that there was no need to hold a hearing on his motion for preliminary injunction in light of the settlement negotiations. By August 2015 the parties had reached a settlement agreement. The agreement required Quality to serve its shareholders with

supplemental disclosures containing information regarding the following: (1) potential conflicts of interest of Quality's senior management and Apax's expressed intention to retain Quality's management team as employees; (2) the potential conflicts of interest of Quality's investment banker, RBC, and its connection with Apax; and (3) the sale process and alternatives to the merger. On August 10, 2015, Quality filed the supplemental disclosures with the SEC.

On August 18, 2015, 98.8% of the shareholders voted to approve the merger with Apax.

On October 28, 2016, the parties entered into a formal stipulation of settlement. On December 16, 2016, the parties filed a joint motion for entry of an order granting joint motion for all parties for notice and hearing for settlement. The trial court entered the requested order on January 20, 2017. The order directed Quality to serve its shareholders with notice of the settlement, and it conditionally certified the shareholders as a class of plaintiffs. The order also designated Delman as the class representative, preliminarily approved the settlement, and set a hearing for April 24, 2017.

On April 3, 2017, Griffith filed an objection to the proposed settlement. He had purchased $160 worth of Quality's shares after the merger was formally announced. Griffith described himself as "an activist investor who has served as a watchdog in the movement to curtail abusive [merger and acquisition] litigation."[1] He

---

[1]Griffith is a professor of law at Fordham University School of Law. He has coauthored various law review articles on the subject of disclosure settlements that arise in the context of litigation involving corporate mergers. See, e.g., Jill E. Fisch, Sean J. Griffith & Steven Davidoff Solomon, Confronting the Peppercorn Settlement in Merger Litigation: An Empirical Analysis and a Proposal for Reform, 93 Tex. L. Rev. 557

objected to the proposed settlement and class certification on four main grounds: (1) the supplemental disclosures were not plainly material to the shareholder's decision on whether to approve the merger, (2) the released claims had not been adequately investigated by plaintiffs' counsel, (3) questions remain regarding the adequacy of class counsel, and (4) plaintiffs' fee request should be rejected because the litigation did not provide a substantial benefit to the shareholders. Griffith argued that Florida should adopt the test for approval of "disclosure settlements" set forth in In re Trulia, Inc. Stockholder Litigation, 129 A.3d 884 (Del. Ch. 2016). Last, Griffith asked the trial court to retain jurisdiction so that he could submit a request for fees he incurred in objecting to the settlement.

Delman filed memorandums of law in support of the proposed settlement and in response to Griffith's objection. He also filed an affidavit from a financial analyst, in which the analyst attested that the supplemental disclosures were material. Quality and Apax filed a joint memorandum in support of the settlement and in opposition to Griffith's objection.

On April 24, 2017, the trial court held a hearing at which the trial court considered argument from all parties and Griffith. On June 21, 2017, the trial court entered an order partially approving the class action settlement. The trial court concluded that the settlement in this case "survives the heightened scrutiny standard," citing Grosso v. Fidelity National Title Insurance Co., 983 So. 2d 1165, 1170 (Fla. 3d DCA 2008). The court also found that the four requirements for class certification are

---

(Feb. 2015); Sean J. Griffith & Alexandra D. Lahav, The Market for Preclusion in Merger Litigation, 66 Vand. L. Rev. 1053 (May 2013). Griffith filed an amicus curiae brief in the Delaware case he urges Florida to adopt. See In re Trulia, Inc. Stockholder Litigation, 129 A.3d 884 (Del. Ch. 2016).

present.  The court then went on to address Griffith's objection and his argument that In re Trulia should apply.  The court ruled that In re Trulia "is good law in Florida, at least for the proposition that a class action settlement should not be approved when the scope of the claims released exceeds the scope of the issues litigated in the case."  The trial court concluded that the release in this case is "narrowly tailored to match the scope of the issues litigated in the case."  Turning to whether the supplemental disclosures were material, the trial court stated that even if they were immaterial, the settlement "is the better choice among the alternatives."

> [T]he Florida courts have such a strong policy favoring resolution of cases by jury trial that an action of this nature would almost certainly not be resolvable on summary judgment.  Plaintiffs have filed an affidavit from an apparently qualified expert that would be sufficient to create an issue of fact regarding the materiality of the disclosure.  Accordingly, the consequence of simply refusing to approve the settlement would most likely be to require the case to proceed to jury trial over the course of a year or two.  Given the finding above that the release is properly matched to the scope of the issues litigated, the class is not damaged by the settlement even if it was all a charade, if it can be protected from excessive transaction costs.  And since there is no mention of the settlement of separate payment to the class representative, transaction cos[t] issues are limited to attorney fee issues.

(Footnote omitted.)  The trial court further ruled that because the settlement does not include plaintiffs' attorney's fees, the issue of fees would be determined in a true adversarial process.  The trial court approved the settlement, essentially reserving jurisdiction on the issue of attorney's fees.  The trial court denied Griffith's objection and his request for fees.  Griffith now appeals.[2]

---

[2]On June 28, 2017, Griffith filed a motion to intervene below, but the trial court did not rule on the motion.  As a member of the class who objected below, Griffith

**II. Analysis**

On appeal, Griffith argues (1) that the trial court erred in approving the settlement without applying the standard set forth in In re Trulia, (2) that the trial court erred in certifying the class without considering whether class counsel provided the class with adequate representation, and (3) that the trial court erred in denying his request for fees. We find merit in his first argument.

"Where the parties, as here, seek certification of the class and approval of their settlement simultaneously, the trial court is required to apply heightened scrutiny and to take a more active role as a guardian of the interests of the absent class members." Grosso, 983 So. 2d at 1170 (emphasis omitted). "To approve a class action settlement, the trial court must find that the agreement was fair, reasonable, and adequate." Id. at 1173 (first citing Fed. R. Civ. P. 23(e)(1)(C); and then citing Ramos v. Philip Morris Cos., 743 So. 2d 24, 31 (Fla. 3d DCA 1999)). Some of the factors relevant to that determination include:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

---

has standing to appeal the approval of a class settlement. See Addison v. City of Tampa, 33 So. 3d 742, 745 (Fla. 2d DCA 2010) ("[T]he United States Supreme Court has stated that unnamed class members are '*parties* to the proceedings in the sense of being bound by the settlement' and, therefore, are entitled to appeal the approval of a class settlement." (quoting Devlin v. Scardelletti, 536 U.S. 1, 10 (2002))).

Id. at 1173-74 (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)).[3]

An appellate court generally reviews a ruling approving a class settlement for abuse of discretion.  Barnhill v. Fla. Microsoft Anti-Trust Litig., 905 So. 2d 195, 199 (Fla. 3d DCA 2005).  But where the trial court applies the wrong law or the issue involves a pure question of law, the ruling is reviewed de novo.  See Van v. Schmidt, 122 So. 3d 243, 246 (Fla. 2013); G4S Secure Sols. USA, Inc. v. Golzar, 208 So. 3d 204, 207-08 (Fla. 3d DCA 2016).

Griffith contends that the trial court erred in failing to either apply the full Grosso test or in failing to adopt the full In re Trulia standard, which he argues is consistent with the Grosso test.  He claims that the trial court improperly used a single-factor test in ruling that a settlement may be approved as long as the proposed release is commensurate with the claims raised in the case.

In In re Trulia, the Delaware Court of Chancery discussed the proliferation of "disclosure settlements" and the problems associated with a request to approve such a settlement.  129 A.3d at 887, 891-99.[4]  The court was asked to approve a proposed

---

[3]Courts have also used the following six factors:
1) the likelihood of success at trial; 2) the range of possible recovery; 3) the point over or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the complexity, expense, and duration of the litigation; 5) the substance and amount of opposition to the settlement; and 6) the stage of the proceedings at which the settlement was achieved.
Nelson v. Wakulla County, 985 So. 2d 564, 570 (Fla. 1st DCA 2008).

[4]One scholar refers to such suits as "merger objection suits" or "strike suits—meritless claims filed for their nuisance value—by entrepreneurial plaintiffs'

settlement of a class action brought by shareholders of Trulia, Inc., for breach of
fiduciary duty relating to a proposed merger with Zillow, Inc.  129 A.3d at 887-88.  The
parties engaged in limited discovery, and within four months after the complaint was
filed, the shareholders entered into an agreement to settle.  Id. at 887.

> In essence, Trulia agreed to supplement the proxy materials
> disseminated to its stockholders before they voted on the
> proposed transaction to include some additional information
> that theoretically would allow the stockholders to be better
> informed in exercising their franchise rights.  In exchange,
> plaintiffs dropped their motion to preliminarily enjoin the
> transaction and agreed to provide a release of claims on
> behalf of a proposed class of Trulia's stockholders.  If
> approved, the settlement will not provide Trulia stockholders
> with any economic benefits.  The only money that would
> change hands is the payment of a fee to plaintiffs' counsel.

Id. at 887.  The agreement provided that plaintiffs' counsel could seek an award of
attorney's fees and expenses up to $375,000.  Id. at 889-90.

The Court of Chancery explained that "disclosure settlements" are
becoming increasingly more common:

> Today, the public announcement of virtually every
> transaction involving the acquisition of a public corporation
> provokes a flurry of class action lawsuits alleging that the
> target's directors breached their fiduciary duties by agreeing

---

attorneys."  Browning Jeffries, The Plaintiff's Lawyer's Transaction Tax: The New Cost
of Doing Business in Public Company Deals, 11 Berkeley Bus. L.J. 55, 56 (Sept. 2014).
> [I]n this new rash of suits, frequently entrepreneurial
> plaintiffs' attorneys are filing boilerplate complaints for the
> sole purpose of capitalizing on their ability to hold up the
> transaction and perhaps force a quick settlement.  Because
> the litigation threatens the consummation of the deal if not
> resolved quickly and because corporations may view the
> settlement amount as a drop in the bucket compared to the
> overall transaction amount, defendants are motivated to
> settle even meritless claims.

Id. at 57-58 (footnotes omitted).  Through the assessment of attorneys' fees, these suits
impose "what amounts to a transaction tax" on corporate merger deals.  Id. at 108.

to sell the corporation for an unfair price. On occasion, although it is relatively infrequent, such litigation has generated meaningful economic benefits for stockholders when, for example, the integrity of a sales process has been corrupted by conflicts of interest on the part of corporate fiduciaries or their advisors. But far too often such litigation serves no useful purpose for stockholders. Instead, it serves only to generate fees for certain lawyers who are regular players in the enterprise of routinely filing hastily drafted complaints on behalf of stockholders on the heels of the public announcement of a deal and settling quickly on terms that yield no monetary compensation to the stockholders they represent.

> . . . .

In just the past decade, the percentage of transactions of $100 million or more that have triggered stockholder litigation in this country has more than doubled, from 39.3% in 2005 to a peak of 94.9% in 2014. Only recently has the percentage decreased, falling to 87.7% in 2015 due to a decline near the end of the year. In Delaware, the percentage of such cases settled solely on the basis of supplemental disclosures grew significantly from 45.4% in 2005 to a high of 76.0% in 2012, and only recently has seen some decline. The increased prevalence of deal litigation and disclosure settlements has drawn the attention of academics, practitioners, and the judiciary.

Id. at 891-92, 894-95 (footnotes omitted). The court explained how such settlements

are achieved in these class action lawsuits:

> In such lawsuits, plaintiffs' leverage is the threat of an injunction to prevent a transaction from closing. Faced with that threat, defendants are incentivized to settle quickly in order to mitigate the considerable expense of litigation and the distraction it entails, to achieve closing certainty, and to obtain broad releases as a form of "deal insurance." . . . .

> Once the litigation is on an expedited track and the prospect of an injunction hearing looms, the most common currency used to procure a settlement is the issuance of supplemental disclosures to the target's stockholders before they are asked to vote on the proposed transaction. The theory behind making these disclosures is that, by having

- 10 -

the additional information, stockholders will be better informed when exercising their franchise rights. Given the Court's historical practice of approving disclosure settlements when the additional information is not material, and indeed may be of only minor value to the stockholders, providing supplemental disclosures is a particularly easy "give" for defendants to make in exchange for a release.

Id. at 892-93 (footnotes omitted). The court further explained that "[o]nce an agreement-in-principle is struck to settle for supplemental disclosures, the litigation takes on an entirely different, non-adversarial character," which the court described as problematic. Id. at 893.

The lack of an adversarial process often requires that the Court become essentially a forensic examiner of proxy materials so that it can play devil's advocate in probing the value of the "get" for stockholders in a proposed disclosure settlement. . . . In an adversarial process, defendants, armed with the help of their financial advisors, would be quick to contextualize the omissions [in the original disclosures] and point out why the missing details are immaterial (and may even be unhelpful) given [information] already disclosed in the proxy. In the settlement context, however, it falls to law-trained judges to attempt to perform this function, however crudely, as best they can.

Id. at 894. The court opined that these dynamics and the court's willingness to approve such settlements "have caused deal litigation to explode in the United States beyond the realm of reason." Id.

The court concluded that in light of the concerns expressed above, disclosure settlements should be met with disfavor "unless the supplemental disclosures address a plainly material misrepresentation or omission[] and the subject matter of the proposed release is narrowly circumscribed to encompass nothing more than disclosure claims and fiduciary duty claims concerning the sale process, if the record shows that such claims have been investigated sufficiently." Id. at 898. The supplemental

information will be considered plainly material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote" or, in other words, if "from the perspective of a reasonable stockholder, there is a substantial likelihood that it 'significantly alter[s] the "total mix" of information made available.' " Id. at 899 (alteration in original) (first quoting Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985); and then quoting Arnold v. Soc'y for Sav. Bancorp, 650 A.2d 1270, 1277 (Del. 1994)).

The court analyzed the supplemental disclosures in that case and found them to be immaterial. The court therefore declined to approve the proposed class settlement, concluding that the terms were not "fair or reasonable to the affected class members." Id. at 887, 907. In other words, "from the perspective of Trulia's stockholders, the 'get' in the form of the [s]upplemental [d]isclosures does not provide adequate consideration to warrant the 'give' of providing a release of claims." Id. at 907.

The Seventh Circuit applied the In re Trulia decision in rejecting a proposed class settlement in what the court termed a "strike suit" or "deal litigation." Hays v. Walgreen Co., 832 F.3d 718, 721 (7th Cir. 2016). The court noted that

> [o]ften the suit asks primarily or even exclusively for disclosure of details of the proposed transaction that could, in principle at least, affect shareholder approval of the transaction. But almost all such suits are designed to end— and very quickly too—in a settlement in which class counsel receive fees and the shareholders receive additional disclosures concerning the proposed transaction. The disclosures may be largely or even entirely worthless to the shareholders, in which event even a modest award of attorneys' fees ($370,000 in this case) is excessive and the settlement should therefore be disapproved by the district judge.

Id. Recognizing that "Delaware's Court of Chancery sees many more cases involving large transactions by public companies than the federal courts of [the Seventh Circuit]," the court adopted the standard set forth in In re Trulia. Id. at 725. The court emphasized that "the misrepresentation or omission that the supplemental disclosures correct must be 'plainly material.' " Id. (quoting In re Trulia, 129 A.3d at 898-99). "If immaterial their correction does nothing for the shareholders. And we add that it's not enough that the disclosures address the misrepresentation or omissions: they must correct them." Id. Because the supplemental disclosures in that case did not correct a plainly material misrepresentation or omission in the original disclosure, the circuit court reversed the district court's ruling approving the settlement. Id. at 725-76.

As noted by the trial court in its order in this case, the extent to which the In re Trulia decision applies in Florida is a question of first impression in the appellate courts.[5] In deciding whether to apply the In re Trulia standard to the instant case, we

---

[5]We note that one Florida trial court has considered a disclosure settlement and reached a similar conclusion as the court did in In re Trulia. Fruchter v. Fla. Progress Corp., No. 99-6167CI-20, 2002 WL 1558220 (Fla. 6th Cir. Ct. Mar. 20, 2002). The trial court declined to certify the class, approve a stipulated settlement, and award fees to plaintiff's counsel. In declining to approve the settlement, the trial court stated the following:

> [T]he [s]tipulation of [s]ettlement contains no compensation or relief for the class members. Indeed, all of the evidence suggests that class members are in precisely the same financial and legal position today, as they would have been had this litigation never been filed. In spite of the fact that it is devoid of benefits for the class members, [c]lass [c]ounsel has urged this court to approve the settlement, grant the [d]efendants their res judicata and presumably grant him several hundred thousand dollars in attorney's fees. This action appears to be the class litigation equivalent of the "Squeegee boys" who used to frequent major urban intersections and who would run up to a stopped car, splash

- 13 -

recognize the complexity of merger litigation and the Delaware courts' expertise in such matters.  See In re Trulia, 129 A.3d at 899 (explaining that the Delaware Court of Chancery has "extensive experience in adjudicating cases of this nature").  In the past, "[t]he Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines."  Connolly v. Agostino's Ristorante, Inc., 775 So. 2d 387, 388 n.1 (Fla. 2d DCA 2000) (quoting Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989)).[6]  In light of the above considerations and the lack of specific guidance in Florida regarding disclosure settlements, we adopt the standard set forth in the well-reasoned In re Trulia decision and clarified in the Hays decision.  We conclude that when a Florida trial court is asked to approve a disclosure settlement in a class action merger lawsuit, in order for a disclosure settlement to pass muster, the supplemental disclosures must address and correct a plainly material misrepresentation or omission and the subject matter of the proposed release must be narrowly circumscribed to encompass nothing more than disclosure claims and fiduciary duty claims concerning the sale process, if the record shows that such claims have been investigated sufficiently.[7]

---

soapy water on its perfectly clean windshield and expect payment for the uninvited service of wiping it off.
Id. at *10.

[6]And regarding the Hays decision, we note that "Florida courts often look to federal cases for guidance as persuasive authority on issues regarding class actions."  Barnhill, 905 So. 2d at 198.

[7]The In re Trulia/Hays standard specific to disclosure settlements is not inconsistent with the more general Grosso standard.  But because the In re Trulia/Hays standard is more tailored to disclosure settlements, it should be applied in such cases.

Although the trial court acknowledged In re Trulia, the trial court applied only part of the standard; the trial court focused only on the release of claims. The trial court failed to assess the value of the supplemental disclosures.[8] The danger in focusing solely on the release is that a meritless action may be settled as long as the release is related to the claims. This test permits plaintiffs in deal litigation to prevail on any settlement and seek attorneys' fees as a result, no matter how meager the consideration, as long as the plaintiffs tailor the release to the claims raised in the litigation. This methodology contributes to the spawning of this type of litigation. Further, the trial court did not consider whether the released claims, which should be narrowly tailored to the complaint, had been investigated sufficiently, as evidenced by its lack of findings on this issue.

The trial court did not consider the supplemental disclosures that Quality provided to shareholders in August 2015. In order for the settlement to be approved, those supplemental disclosures must have contained information that corrected a misrepresentation or omission in the original disclosures and that information must have been of such a nature that a reasonable shareholder would likely have considered it important in deciding how to vote on the merger. Because we now hold that the In re Trulia standard is applicable and because the trial court's ruling is based, at least in part, on an incorrect legal standard, we reverse the trial court's approval of the settlement and remand for the trial court to apply the proper standard. See Thompson v. Douds, 852 So. 2d 299, 305 (Fla. 2d DCA 2003) ("Usually when a trial court applies

---

[8]We note that despite acknowledging Grosso, the trial court did not consider the supplemental disclosures under the Grosso factors generally applicable to class action settlements.

the incorrect legal standard, we reverse and remand for a new hearing at which the trial court must reconsider its decision in light of the proper legal standard."); Wilson v. Wilson, 827 So. 2d 401, 403 (Fla. 2d DCA 2002) (reversing order denying relocation that was "based, at least in part, on an incorrect legal standard" and remanding for trial court to consider issue "under the correct legal standard").  In light of our reversal on this issue, we also reverse the denial of Griffith's request for fees and remand for reconsideration of such request after the trial court determines whether to approve the settlement under the proper standard.

Affirmed in part, reversed in part, and remanded for further proceedings.


KHOUZAM and BLACK, JJ., Concur.